### BANK OF KENTUCKY v. ADAMS EXPRESS COMPANY.

### PLANTERS' NATIONAL BANK OF LOUISVILLE v. ADAMS EXPRESS COMPANY.

1. A party engaged as a common carrier cannot, by declaring or stipulating that he shall not be so considered, divest himself of the liability attached to the fixed legal character of that occupation.

2. A common carrier, who undertakes for himself to perform an entire service, has no authority to constitute another person or corporation the agent of his consignor or consignee. He may employ an agency, but it must be subordinate to him, and not to the shipper, who neither employs it, pays it, nor has any right to interfere with it. Its acts become his, because done in his service and by his direction.

3. Therefore, where an express company engaged to transport packages, &c., from one point to another, sends its messenger in charge of them on the car set apart for its use by the railroad company employed to perform the service, the latter company becomes the agent of the former.

4. An exception in its bill of lading, "that the express company is not to be liable in any manner or to any extent for any loss or damage or detention of such package, or its contents, or of any portion thereof, occasioned by fire," does not excuse the company from liability for the loss of such package by fire, if caused by the negligence of a railroad company to which the former had confided a part of the duty it had assumed.

5. Public policy demands that the right of the owners to absolute security against the negligence of the carrier, and of all persons engaged in performing his duty, shall not be taken away by any reservation in his receipt, or by any arrangement between him and the performing company.

ERROR to the Circuit Court of the United States for the District of Kentucky.

These are actions by the plaintiffs in error to recover the value of certain packages containing money, which, on their transportation over the Louisville and Nashville Railroad in charge of a messenger of the defendant in error, were destroyed by fire. There was a verdict and judgment in each case for the defendant. The plaintiffs sued out these writs of error. The facts are set forth in the opinion of the court. So much of the instructions of the court below as are referred to but not incorporated in the opinion are as follows : —

"If the jury believe that the teller of the Louisiana National Bank presented the bill of lading to the agent of the express company for his signature, with the blanks filled, and at such time delivered to the agent the package of money,

without disclosing who was the owner of it, but addressed to
the plaintiff at Louisville that the bill of lading was signed
and redelivered to the teller, and forwarded to the plaintiff
at Louisville, then the bill of lading thus signed constitutes
the contract, and all the exceptions in it are a part of the
contract, no matter whether each or all of them were known
to the Louisiana National Bank or not; and the plaintiff is
bound by the contract, whether it expressly authorized the
Louisiana National Bank to make it or not. The evidence
tending to show that the bill of lading was not read at the
time of the signing, and that nothing was said about the excep-
tions contained in it, is immaterial."

"It is claimed by the plaintiff that the defendant was want-
ing in care in the use of the safe or box in which the package
was at the time of the loss. If there was any such want of
reasonable care in this particular, the defendant is undoubtedly
liable; but if the safe was such as prudent persons engaged in
like employment generally use for the purpose, there was no
want of care, and the defendant is not responsible for want of
care in this particular."

*Mr. John M. Harlan* for the plaintiffs in error.

While the right of a common carrier to contract for a reason-
able limitation of his responsibility cannot be disputed, it is
equally clear that such responsibility cannot be restricted or
qualified, unless he "expressly stipulates for the restriction and
qualification." *York Company* v. *Central R. R.*, 3 Wall. 107.
The exemption should be specific and certain, leaving no room
for controversy. *New Jersey Steam Nav. Co.* v. *Merchants'
Bank*, 6 How. 383; *Railroad Co.* v. *Manufacturing Co.*, 16
Wall. 329.

A common carrier does not cease to be such because he has
limited his liability by a special contract. *Davidson* v. *Gra-
ham*, 2 Ohio St. 140; *Railroad Company* v. *Lockwood*, 17 Wall.
357; *Hooper* v. *Wells, Fargo, & Co.*, 27 Cal. 11; *Christenson* v.
*Am. Ex. Co.*, 15 Minn. 270. Nor will he be permitted to
stipulate for immunity for his own negligence, or that of his
servants or agents, even though he can exercise no control
over their actions. *Ashmore* v. *Penn. S. T. Co.*, 4 Dutch.
180; *Railroad Company* v. *Lockwood, supra; Christenson* v.

*Am. Ex. Co.*, *supra; Welch* v. *Boston & Albany R. R. Co.*, 15 Am. Law Reg., March, 1876, No. 3, p. 140.

The Louisville and Nashville Railroad Company was, in contemplation of law, for the purposes of transportation, the agent of the defendant in error. The latter is, therefore, responsible for the negligence of the former. *Hooper* v. *Wells, Fargo, & Co.*, *supra; Christenson* v. *Am. Ex. Co.*, *supra; Buckland* v. *Adams Ex. Co.*, 97 Mass. 124; Redfield on Carriers, sect. 56, note 27.

*Mr. G. C. Wharton* for the defendant in error.

The right of a common carrier to limit by special contract his common-law liability is fully settled. *Express Company* v. *Caldwell*, 21 Wall. 267; *York Company* v. *Central Railroad*, 3 id. 107; *Railroad Company* v. *Lockwood*, 17 id. 357; *New Jersey Steam Navigation Co.* v. *Merchants' Bank*, 6 How. 344.

The bill of lading was evidence of the contract between the parties. The plaintiffs in error accepted it without objection. They are therefore bound by the conditions therein expressed. *Brooman* v. *Am. Ex. Co.*, 21 Wis. 152; *Grace* v. *Adams Ex. Co.* 100 Mass. 505; *York Company* v. *Central Railroad*, *supra; Railroad Company* v. *Androscoggin Mills*, 22 Wall. 595; *Meyer, Agent*, v. *Harden's Ex. Co.*, 24 How. Pr. 290; *Railroad Company* v. *F. & M. Bank*, 20 Wis. 123; *Parsons* v. *Monteath and Hazard*, 13 Barb. 353; *Dorr* v. *Steam Navigation Company*, 1 Kern. 485; *Wells* v. *New York Central Railroad Company*, 24 N. Y. 180.

Although the defendant in error remains a common carrier, its liability was limited to that of an ordinary bailee for hire, in reference to the particular limitations in the contract. It is not, therefore, responsible for negligence, or the want of ordinary care of persons over whom it had no control. *Railroad Company* v. *Lockwood*, *supra; York Company* v. *Central Railroad*, *supra; New Jersey Steam Navigation Company* v. *Merchants' Bank*, *supra; Dorr* v. *Steam Navigation Company*, *supra; Meyer, Agent*, v. *Harden's Ex. Co.*, *supra*.

If the railroad or any of its employés were negligent, the plaintiffs in error have their remedy against it. *New Jersey Steam Navigation Company* v. *Merchants' Bank*, *supra*.

Neither the relation of master and servant nor that of prin-

cipal and agent existed between the express messenger and the railroad company.  *Union Pacific Railroad* v. *Nickols,* 8 Kans. 505 ; *Yeomans* v. *The Centra Casta Steam Navigation Company,* 44 Cal. 71.

The railroad company not being the servant of the defendant in error, nor under its control, the doctrine of *respondeat superior* does not apply.  *Blake* v. *Ferris,* 5 N. Y. 48.

MR. JUSTICE STRONG delivered the opinion of the court.

The defendants in each of these cases are an express company, engaged in the business of carrying for hire money, goods, and parcels, from one locality to another.  In the transaction of their business they employ the railroads, steamboats, and other public conveyances of the country.  These conveyances are not owned by them, nor are they subject to their control, any more than they are to the control of other transporters or passengers.  The packages intrusted to their care are at all times, while on these public conveyances, in the charge of one of their own messengers or agents.  In conducting their business, they are associated with another express company, called the Southern ; and the two companies are engaged in carrying by rail through Louisiana and Mississippi, to Humboldt, Tenn., and thence over the Louisville and Nashville Railroad to Louisville, Ky., under a contract by which they divide the compensation for carriage in proportion to the distance the package is transported by them respectively.  Between Humboldt and Louisville both companies employ the same messenger, who is exclusively subject to the orders of the Southern Express Company when south of the northern boundary of Tennessee, and to the orders of the defendants when north of that boundary.

Such being the business and occupation of the defendants, they are to be regarded as common carriers, and, in the absence of stipulations to the contrary, subject to all the legal responsibilities of such carriers.

On the twenty-sixth day of July, 1869, the Southern Express Company received from the Louisiana National Bank at New Orleans two packages, one containing $13,528.15, for delivery to the Bank of Kentucky, Louisville, and the other containing

$3,000, for delivery to the Planters' National Bank of Louisville, at Louisville. The money belonged to the banks respectively to which the packages were sent. When the packages were thus received, the agent of the Southern Express Company gave a receipt, or domestic bill of lading, for each, of which the following is a copy (the two differing only in the description of the consignees, and in the amount of money mentioned) : —

### Domestic Bill of Lading.

SOUTHERN EXPRESS COMPANY, EXPRESS FORWARDERS.

"No. 2.   $13,528.15.                       July 26, 1869.

" Received from Lou. Nat. Bank one package, sealed, and said to contain thirteen thousand five hundred and twenty-eight $\frac{15}{100}$ dollars.

" Addressed Bank of Kentucky, Louisville, Ky. Freight coll.

" Upon the special acceptance and agreement that this company is to forward the same to its agent nearest or most convenient to destination only, and then to deliver the same to other parties to complete the transportation, such delivery to terminate all liability of this company for such package; and also that this company are not to be liable in any manner or to any extent for any loss, danger, or detention of such package or its contents, or of any portion thereof, occasioned by the acts of God, or by any person or persons acting or claiming to act in any military or other capacity in hostility to the government of the United States, or occasioned by civil or military authority, or by the acts of any armed or other mob or riotous assemblage, piracy, or, the dangers incident to a time of war, nor when occasioned by the dangers of railroad transportation, or ocean or river navigation, or by fire or steam. The shipper and owner hereby severally agree that all the stipulations and conditions in this receipt shall extend to and inure to the benefit of each and every company or person to whom the Southern Express Company may intrust or deliver the above-described property for transportation, and shall define and limit the liability therefor of such other companies or person. In no event is this company to be liable for a greater sum than that above mentioned, nor shall it be liable for any such loss, unless the claim therefor shall be made in writing, at this office, within thirty days from this date, in a statement to which this receipt shall be annexed.

" Freight coll.

"For the company,          SHACKLEFORD."

Across the left-hand end of said receipt was the following printed matter : —

"Insured by Southern Express Company for       to       only except against loss occasioned by the public enemy.

"For the company —

"Insurance, $ — "

The bills of lading were sent to the consignees at Louisville.

Having thus received the packages, the Southern Express Company transported them by railroad as far as Humboldt, Tenn., and there delivered them to the messenger of the defendants (who was also their messenger) to complete the transportation to Louisville, and to make delivery thereof to the plaintiffs. For that purpose the messenger took charge of them, placing them in an iron safe, and depositing the safe in an apartment of a car set apart for the use of express companies, for transportation to Louisville. Subsequently, while the train to which the car containing the packages was attached was passing over a trestle on the line of the Louisville and Nashville Railroad, and while the packages were in charge of the messenger, the trestle gave way during the night, the train with the express car was thrown from the track, and the car with others caught fire from the locomotive and was burned, together with the money in the safe. The messenger was rendered insensible by the fall, and he continued so until after the destruction was complete. There was some evidence that some of the timber of the trestle seemed decayed.

Upon this state of facts the learned judge of the Circuit Court instructed the jury, that, "If they believed the package was destroyed by fire, as above indicated, without any fault or neglect whatever on behalf of the messenger or defendants, the defendants have brought themselves within the terms of the exceptions in the bill of lading, and are not liable." And again, the court charged: "It is not material to inquire whether the accident resulted from the want of care, or from the negligence of the Louisville and Nashville Railroad Company, and its agents, or not." And again: "But when he (the common carrier) has limited his liability, so as to make himself responsible for

ordinary care only, and the shipper to recover against him is obliged to aver and prove negligence, it must be his negligence, or the negligence of his agents, and not the negligence of persons over whom he has no control. If in his employment he uses the vehicles of others, over which he has no control, and uses reasonable care, — that is, such care as ordinarily prudent persons engaged in like business use in selecting the vehicles, — and if the loss arises from a cause against which he has stipulated with the shipper, he shall not be liable for the same, unless it arises from his want of care, or the want of care of his employés." At the same time, the learned judge instructed the jury as follows : " Without, therefore, deciding whether or not the evidence adduced in the case tends to establish any want of reasonable or ordinary care on the part of the Louisville and Nashville Railroad Company, I instruct you, that such evidence is irrelevant and incompetent, and that you should disregard it ; that is, give no more effect to it than if it had not been adduced."

These extracts from the charge, to all of which exception was duly taken, exhibit the most important question in these cases, which is, whether the stipulations of the carriers' receipt or bill of lading relieved them from responsibility for the negligence of the railroad company employed by them to complete the carriage. The Circuit Court was of opinion, as we have seen, that they did ; and practically instructed the jury, that, under the modified contract of bailment, the defendants were liable for loss by fire only to the extent to which mere bailees for hire, not common carriers, are liable ; that is, that they were responsible only for the want of ordinary care exercised by themselves or those who were under their control. With this we cannot concur, though we are not unmindful of the ability with which the learned judge has defended his opinion.

We have already remarked, the defendants were common carriers. They were not the less such because they had stipulated for a more restricted liability than would have been theirs had their receipt contained only a contract to carry and deliver. What they were is to be determined by the nature of their business, not by the contract they made respecting the liabilities which should attend it. Having taken up the occupation,

its fixed legal character could not be thrown off by any declaration or stipulation that they should not be considered such carriers.

The duty of a common carrier is to transport and deliver safely. He is made, by law, an insurer against all failure to perform this duty, except such failure as may be caused by the public enemy, or by what is denominated the act of God. By special contract with his employers, he may, it is true, to some extent, be excused, if the limitations to his responsibility stipulated for are, in the judgment of the law, reasonable, and not inconsistent with sound public policy. It is agreed, however, that he cannot, by any contract with his customers, relieve himself from responsibility for his own negligence or that of his servants; and this because such a contract is unreasonable and contrary to legal policy. So much has been finally determined in *Railroad Company* v. *Lockwood*, 17 Wall. 357. But can he, by a contract made with those who intrust property to him for carriage and delivery, — a contract made at the time he receives the property, — secure to himself exemption from responsibility for consequences of the negligence of a railroad company or its agents not owned or controlled by him, but which he employs in the transportation? This question is not answered in the Lockwood case. It is raised here, or rather the question is presented, whether a common carrier does relieve himself from the consequences of such negligence by a stipulation that he shall not be liable for losses by fire.

The exception or restriction to the common-law liability introduced into the bills of lading given by the defendants, so far as it is necessary to consider it, is, "that the express company are not to be liable in any manner or to any extent for any loss or damage, or detention of such package or its contents, or of any portion thereof, occasioned by fire." The language is very broad; but it must be construed reasonably, and, if possible, consistently with the law. It is not to be presumed the parties intended to make a contract which the law does not allow. If construed literally, the exception extends to all loss by fire, no matter how occasioned, whether occurring accidentally, or caused by the culpable negligence of the carriers or their servants, and even to all losses by fire caused by wilful

acts of the carriers themselves. That it can be operative to such an extent is not claimed. Nor is it insisted that the stipulation, though assented to by the shippers, can protect the defendants against responsibility for failure to deliver the packages according to their engagement, when such failure has been caused by their own misconduct, or that of their servants or agents. But the Circuit Court ruled, the exception did extend to negligence beyond the carriers' own, and that of the servants and agents appointed by them and under their control, — that it extended to losses by fire resulting from the carelessness of a railroad company, employed by them in the service which they undertook, to carry the packages; and the reason assigned for the ruling was, that the railroad company and its employés were not under the control of the defendants. With this ruling we are unable to concur. The railroad company, in transporting the messenger of the defendants and the express matter in his charge, was the agent of somebody: either of the express company, or of the shippers or consignees of the property. That it was the agent of the defendants is quite clear. It was employed by them, and paid by them. The service it was called upon to perform was a service for the defendants; a duty incumbent upon them, and not upon the plaintiffs. The latter had nothing to do with the employment. It was neither directed by them, nor had they any control over the railroad company or its employés. It is true, the defendants had also no control over the company or its servants: but they were its employers, presumably they paid for its service; and that service was directly and immediately for them. Control of the conduct of an agency is not in all cases essential to liability for the consequences of that conduct. If any one is to be affected by the acts or omissions of persons employed to do a particular service, surely it must be he who gave the employment. Their acts become his, because done in his service and by his direction. Moreover, a common carrier who undertakes for himself to perform an entire service has no authority to constitute another person or corporation the agent of his consignor or consignee. He may employ a subordinate agency; but it must be subordinate to him, and not to one who neither employs it nor pays it, nor has any right to interfere with it.

If, then, the Louisville and Nashville Railroad Company was acting for these defendants, and performing a service for them, when transporting the packages they had undertaken to convey, as we think must be concluded, it would seem it must be considered their agent. And why is not the reason of the rule, that common carriers cannot stipulate for exemption from liability for their own negligence and that of their servants and agents, as applicable to the contract made in these cases as it was to the facts that appeared in the case of *Railroad Company* v. *Lockwood?* The foundation of the rule is, that it tends to the greater security of consignors, who always deal with such carriers at a disadvantage. It tends to induce greater care and watchfulness in those to whom an owner intrusts his goods, and by whom alone the needful care can be exercised. Any contract that withdraws a motive for such care, or that makes a failure to bestow upon the duty assumed extreme vigilance and caution more probable, takes away the security of the consignors, and makes common carriage more unreliable. This is equally true, whether the contract be for exemption from liability for the negligence of agencies employed by the carrier to assist him in the discharge of his obligations, though he has no control over them, or whether it be for exemption from liability for a loss occasioned by the carelessness of his immediate servant. Even in the latter case he may have no actual control. Theoretically, he has; but most frequently, when the negligence of his servant occurs, he is not at hand, has no opportunity to give directions, and the negligent act is against his will. He is responsible, because he has put the servant in a place where the wrong could be done. It is quite as important to the consignor and to the public, that the subordinate agency, though not a servant under immediate control, should be held to the strictest care, as it is that the carrier himself and the servants under his orders should be.

For these reasons, we think it is not admissible to construe the exception in the defendants' bills of lading as excusing them from liability for the loss of the packages by fire, if caused by the negligence of the railroad company to which they confided a part of the duty they had assumed.

There are other reasons of weight which deserve consideration.

Express companies frequently carry over long routes, at great distances from the places of destination of the property carried, and from the residence of its owners. If in the course of transportation a loss occurs through the want of care of managers of public conveyances which they employ, the carriers or their servants are at hand. They are best acquainted with the facts. To them those managers of the public conveyances are responsible, and they can obtain redress much more conveniently than distant owners of the property can. Indeed, in many cases, suits by absent owners would be attended with serious difficulties. Besides, express companies make their own bargains with the companies they employ, while they keep the property in their own charge, usually attended by a messenger. It was so in the present case. The defendants had an arrangement with the railroad company, under which the packages of money, enclosed in an iron safe, were put into an apartment of a car set apart for the use of the express company. Yet the safe containing the packages continued in the custody of the messenger. Therefore, as between the defendants and the railroad company, it may be doubted whether the relation was that of a common carrier to his consignor, because the company had not the packages in charge. The department in the car was the defendants' for the time being; and, if the defendants retained the custody of the packages carried, instead of trusting them to the company, the latter did not insure the carriage. *Miles* v. *Cattle*, 6 Bing. 743; *Towers* v. *The Utica & Syracuse R. R. Co.*, 7 Hill (N. Y.), 47; Redf. on Railw., sect. 74.

Now, can it be a reasonable construction to give to the contract between the defendants and the plaintiffs, that the former, who had agreed to carry and deliver the packages at Louisville, reserved to themselves the right to employ a subordinate carrier, arrange with him that he should be responsible only for ordinary vigilance against fire, and by that arrangement relieve themselves from what without it would have been their clear duty? Granting that the plaintiffs can sue the railroad company for the loss of the packages through its fault, their right comes through their contract between it and the defendants. They must claim through that. 6 How. 381. Had the packages

been delivered to the charge of the railroad company, without · any stipulation for exemption from the ordinary liability of carriers, it would have been an insurer both to the express company and to the plaintiffs. But, as they were not so delivered, the right of the plaintiffs to the extremest constant vigilance during all stages of the carriage is lost, if the defendants are not answerable for the negligence of the railroad company, notwithstanding the exception in their bills of lading. We cannot close our eyes to the well-known course of business in the country. Over very many of our railroads the contracts for transportation of goods are made, not with the owners of the roads, nor with the railroad companies themselves, but with transportation agencies or companies which have arrangements with the railroad companies for the carriage. In this manner, some of the responsibilities of common carriage are often sought to be evaded; but in vain. Public policy demands that the right of the owners to absolute security against the negligence of the carrier, and of all persons engaged in performing the carrier's duty, shall not be taken away by any reservation in the carrier's receipt, or by any arrangement between him and the performing company.

It has been urged on the part of the defence, that, though the contract does not attempt to exempt, and could not have exempted, the express company from liability for loss occasioned by the neglect of itself or its servants, yet, when it is sought to charge the company with neglect, it must be such as it is responsible for upon the general principles of law; and that, upon those principles, no one is responsible for damage occasioned by neglect, unless it be the neglect of himself, his servants, or agents. The argument mistakes, we think, when it asserts, that, upon general principles of law, no one is responsible for the consequences of any neglect except his own, or that of his agents or servants. Common carriers certainly are, and for very substantial reasons. These defendants, it is agreed, were common carriers; and they remained such after the exception in their receipt. If it be said, the exception reduced their responsibility to such an extent as to make them liable only for such neglect as fastens a liability upon persons who are not common carriers, the answer is, such an averment assumes the

very thing to be proved; and, even if the argument were sound, the question would still remain, whether the railroad company employed by the defendants to effect the carriage is not properly to be regarded as their agent, though not under their control. That question we have already considered.

Again: it is urged, that, though the defendants remained common carriers, notwithstanding their contract, their responsibility was limited by their receipt to that of an ordinary bailee for hire; and, as such a bailee is not held liable for the neglect of persons over whom he has no control, it is argued that these defendants are not liable for the negligence of the railroad company. This also assumes what cannot be admitted. Although we are told all the authorities agree, that, when a common carrier has by special contract limited his liability, he becomes, with reference to that particular transaction, an ordinary bailee, — a private carrier for hire, — or reduces his responsibilities to those of an ordinary bailee for hire, yet we do not find that the authorities assert that doctrine, if by the phrase "that particular transaction" is meant the undertaking to carry. Certainly, those to which we have been referred do not. We do not deny that a contract may be made which will put a common carrier on the same level with a private carrier for hire, as respects his liability for loss caused by the acts or omissions of others. The consignor may, by contract, restrain him; may direct how and by what agencies he shall carry. Under such an arrangement he may become a mere forwarder, and cease to be a carrier. But what we have to decide in these cases is, whether the contract proved has that operation. We have already said, we think it has not. The exception in the bills of lading has sufficient to operate upon, without being a cover for negligence on the part of any persons engaged in the service undertaken by the carriers. It exempts the defendants from responsibility for loss by fire, caused by the acts or omissions of all persons who are not agents or agencies for the transportation.

That is a large restriction; and beyond that, in our judgment, the exception in the present case does not extend.

To the opinion we have thus expressed we find direct support in the case of *Hooper* v. *Wells, Fargo, & Co.*, 27 Cal. 11.

There an express company had undertaken to transport gold-dust and bullion from Los Angeles to San Francisco, and deliver to address. The receipt for the property contained the following stipulation : "In no event to be liable beyond our route, as herein receipted. It is further agreed, and is part of the consideration of this contract, that Wells, Fargo, & Co. are not to be responsible except as forwarders, nor for any loss or damage arising from the dangers of railroad, ocean, or river navigation, fire, &c., unless specially insured by them, and so specified in this receipt." In the course of the transportation, the messenger of the carriers who had the property in charge took it on board a steam-tug, for the purpose of placing it on a steamer bound to San Francisco. On the way to the steamer, the boiler of the steam-tug exploded, in consequence of carelessness of its officers, and the gold-dust and bullion were thereby lost. The steam-tug did not belong to the express company, nor was it or its officers under their control. Yet the court adjudged that the managers and employés of the steam-tug were in legal contemplation the managers and employés of the carrier, and that the restrictive clause in the receipt did not exempt the carriers from liability for loss occasioned by the carelessness of those employés. To the same effect is the case of *Christensen et al.* v. *The American Ex. Co.*, 15 Minn. 270, and the case of *Machu* v. *The London & South-western Railway Company*, 2 Exch. 415, though arising under the carrier acts of 11 Geo. IV. and 1 Wm. IV., is very analogous. The statute declared that the carrier should be liable to answer for the felonious acts of any coachman, guard, book-keeper, porter, or other servant in his employ. The court considered that all parties actually employed in doing the work which the carrier undertook to do, either by himself or his servants, were to be regarded as his servants, within the meaning of the act. Baron Rolfe said, the right as against the carriers arises not from the relation of master and servant, but by virtue of the contract into which they have entered to deliver the goods. This was said in answer to an argument like the one relied upon in this case, that the relation of master and servant could not exist between the carriers and the servants of a sub-contractor.

The other objections urged against the charge given by the court below to the jury require but brief notice.

We find no error in what the circuit judge said upon the question whether the bills of lading, with the exceptions, constituted the contract between the parties. The charge in this particular is justified by very numerous authoritative decisions. *York Company* v. *Central Railroad Company*, 3 Wall. 107 ; *Grace* v. *Adams*, 100 Mass. 505 ; *Wells* v. *The Steam Nav. Co.*, 2 Comst. 204 ; *Dorr* v. *New Jersey Steam Nav. Co.*, 1 Kern. 485 ; 6 How. 344 ; 3 Wall. 107 ; 6 Blatchf. 64 ; *Kirkland* v. *Dinsmore*, 62 N. Y. 161.

Nor was there error in the instruction given respecting the iron safe. Taken as a whole, it was correct.

The charge covered the whole case, and, except in those particulars in which we have indicated our opinion that it was erroneous, we find no just reason to complain of it.

But for the errors we have pointed out new trials must be awarded.

*Judgment in each case reversed, and the record remitted with directions to award a venire de novo.*