ALBERT S. AUSTIN, Respondent, v. ST. LOUIS and ST. PAUL PACKET COMPANY, Appellant.

February 12, 1884.

1. COMMON CARRIERS — LIABILITY OF. — A common carrier can not escape responsibility for the loss of freight, not caused by the act of God or the public enemy, by showing that it employed the means of transportation furnished to it by others.

2. —— AGENCY. — In the absence of contrary proof it will be presumed that the persons employing the carrier acted as the agents of the owner in making the contract of carriage.

3. —— PLEADINGS. — A petition containing facts sufficient to fix a liability upon a common carrier at common law, is good after verdict.

APPEAL from the St. Louis Circuit Court, HORNER, J. *Affirmed.*

GIVEN CAMPBELL, for the appellant: The petition does not state facts which constitute a cause of action. — *Wald-heier* v. *Railroad*, 71 Mo. 517; *Faulkner* v. *Faulkner*, 73 Mo. 335.

C. S. HAYDEN, for the respondent.

BAKEWELL, J., delivered the opinion of the court.

The petition alleges that the defendant corporation is a common carrier; that plaintiff delivered to defendant at La Crosse, Wis., and to its agents then in charge of, and running, the steamer Arkansas, for transportation and delivery to plaintiff at St. Louis, certain household goods worth $500, which defendant received, and, for value, agreed to transport them on the Arkansas, by the Mississippi River, and deliver them within a reasonable time to plaintiff at St. Louis; that defendant has failed and refused to deliver the goods to plaintiff, whereby they have been lost to plaintiff, to his damage, etc. The answer is a general denial. There was a verdict and judgment for $500. Plaintiff remitted $67.31, upon which the motion for new trial was overruled, and there was judgment for $432.69.

It is earnestly contended for appellant that there is no substantial evidence to support the verdict. It appears from the evidence, that at the date of the transaction in question there were two transportation companies engaged in running boats between St. Paul and St. Louis, one was called the St. Louis and St. Paul Packet Company. This is the defendant, a Missouri corporation, having an office in St. Louis. William F. Davidson is president and Frank Johnson the secretary of this company. The other corporation is called the St. Louis and St. Paul Passenger and Freight Line. Of this company S. S. Davidson is president. At the time the arrangement was made for shipping the goods in question, both the lines were in the habit of landing their boats in St. Louis at the wharf-boats which had formerly been used by the Keokuk Line. On one of these wharf-boats, the old sign of the Keokuk Line remained. It does not appear that there was any sign on the other wharf-boat; but they both lay together, one being used for receiving, and the other for discharging goods. The steamer War Eagle was a boat of the St. Louis and St. Paul Packet Company Line; and the Arkansas appears to have been a boat used by the St. Louis and St. Paul Passenger and Freight Line, and owned by the president of that line, though there is testimony to the effect that she was advertised to run for the other line and was commonly spoken of by steamboat men as running for that line, and that plaintiff had notice of this.

At the time of the accident, the Arkansas was coming down the river towing two barges, one on each side. One of these barges, on which was a large portion of plaintiff's goods, struck the Burlington bridge and sunk. A large box of goods of plaintiff's was lost. Some of the goods were recovered and taken on board the Arkansas in a damaged condition. Johnson, the secretary of defendant, told plaintiff that the barge that was sunk was defendant's barge.

Plaintiff testified that in September, 1881, the goods in question were at New Lisbon where his wife lived; that he went to Johnson, the secretary of defendant, whom he had known for years, having worked as ship carpenter on boats of the company of which Johnson was secretary, and of the Keokuk Line, with which Johnson had formerly been connected. He saw Johnson on the wharf-boat of defendant, and told him that he wanted to bring his wife and household goods from La Crosse, and would like to make arrangement with Johnson to bring them and pay freight on arrival. Johnson said: "Certainly. We can manage that for you;" and told him to go to the office on the wharf-boat. There he was told to go to the general ticket agent, and he would give a letter for plaintiff's wife to show to the captain of the War Eagle which was then lying at the wharf-boat. Plaintiff went upstairs to the ticket agent on the wharf-boat, and he gave him a sealed letter directed to the captain of the War Eagle to mail to his wife, and said she must give that to the captain of the War Eagle, and he would bring her and the freight to St. Louis on the terms agreed upon between the agent and plaintiff on the wharf-boat. Plaintiff's wife was at New Lisbon. Plaintiff wrote to her as directed, enclosing the sealed letter, and telling her the arrangement he had made with Johnson. In October, plaintiff found some of his goods in a damaged condition on the Arkansas at defendant's wharf-boat, and was told by the captain that the rest were in the river. He then went to Johnson at defendant's office on the levee. Johnson said they could do nothing; that the thing was an accident, that he must stand his loss; that they had lost their brand new barge by the same disaster. Plaintiff then went to the general clerk on the wharf-boat and asked for the charges. The clerk handed plaintiff a bill as follows:—
"Daily line. Per steamboat Arkansas, trip No. 19 (M.) Albert Austin to St. Louis and St. Paul Packet Company, Dr. pa. H. H. weight 1970, rate 45, amount $8.85; charges $8.82,

total $17.37.'' Plaintiff then handed to the clerk a written protest prepared by his attorney, and which was directed to defendant, and counted out the money, $17.37, on the counter. The clerk threw it back, and told plaintiff to go to Mr. Johnson for his freight. To which plaintiff replied, that Johnson had just sent him there. Plaintiff then went back to the general office of defendant, where he found only W. F. Davidson, the president of defendant, who looked at the bills and protest, and said : `` I see we have got to have a lawsuit with you. We might as well have it first as last.'' Davidson then folded up the protest, and kept it. Afterwards, plaintiff met Johnson and told him they had refused to give him his goods. Johnson replied : `` Well, they don't know what they are about. Come with me, I will give you your freight.'' Johnson and plaintiff went together to the wharf-boat, and Johnson got plaintiff's bill from the clerk in the office, and asked him to sign a paper, and take the freight. Plaintiff refused to sign the paper, and left without getting his goods.

It further appeared that plaintiff's wife delivered the sealed letter to the captain of the War Eagle, which was one of defendant's boats. The captain told her that her goods had come on from New Lisbon, but were side-tracked at La Crosse, and not accessible ; that he could not wait for them ; but that they would be put on the next boat of the line coming down, which would probably be the Arkansas. She came to St. Louis on the War Eagle.

On behalf of defendant, Baker swore that he was agent, not of defendant, the packet company, but of the freight line, and that the letter he gave to plaintiff was directed to the clerks of the steamer of the `` St. Louis and St. Paul Packet Line.'' There was testimony on behalf of defendant to the general effect that the Arkansas was owned and used by the freight line, and not by the packet company ; that the wharf-boat was leased by the freight line ; that the `` St. Louis and St. Paul Passenger and Freight Line ''

painted over their office in La Crosse " St. Louis and St. Paul Packet Line," and that this was meant by them for an abbreviation of their full name.   Defendant's freight agent admitted that freights consigned to the " St. Louis and St. Paul Packet Line," were sent on any boats going, whether those of defendant or of the freight line, and declined to state positively that the Arkansas had not been advertised as a boat of defendant's line, though he thought it had not been so advertised.

There was testimony tending to show that defendant was a common carrier, and also as to the reasonable value of the goods in St. Louis at the time they ought to have been delivered.

At the close of plaintiff's case, and at the close of the whole case, defendant asked an instruction in the nature of a demurrer to the evidence, which was refused.   The court also refused an instruction asked by defendant to the effect that a verdict for defendant in this case would not be a bar to a suit against the St. Louis and St. Paul Passenger and Freight Line, and an instruction that, " this action is based upon an alleged contract whereby it is claimed by plaintiff that defendant received his goods at La Crosse, Wisconsin, and agreed to carry them to St. Louis and deliver them to plaintiff.   The burden of proving this contract by affirmative evidence, is upon plaintiff, and there is no evidence which the jury can consider tending to prove such contract, and they must find for defendant."

The case was given to the jury upon the following instructions, of which the first three were given at the instance of plaintiff; the others were asked by defendant :—

1. " If the jury believe from the evidence that the defendant permitted the persons owning, controlling, or running the steamboat Arkansas, whoever they were, to act for defendant, and for defendant to carry these goods from La Crosse to St. Louis, and that, upon the arrival of the boat at St. Louis, defendant assumed the custody and control of

these goods as goods carried by this defendant, or by others at its request or for it, then it makes no difference whether the Arkansas was, when the goods were shipped on her, owned, controlled, or run by third parties, or by this defendant.

2. " It is not necessary for plaintiff to show any contract, or any agreement of any kind, by which defendant or any of its agents agreed in terms to transport or take these goods from La Crosse to St. Louis. It is for the jury to say, from all the circumstances in evidence before them, whether defendant, either by itself or by others authorized to act for it, undertook to have these goods or any of them transported by river from La Crosse to St. Louis.

3. " If the jury find for plaintiff, and believe from the evidence that defendant, upon demand being made for the goods and the money for the freight tendered to defendant, refused to deliver the goods to plaintiff, or that the defendant refused to deliver the goods except on condition of plaintiff signing some written paper, they will assess plaintiff's damages at the fair and reasonable value of the goods, as the goods would have been had they been in good order and condition at St. Louis on their arrival there, less the amount of the freight bill offered in evidence, and the jury may add interest on such balance at six per cent per annum from the date of the refusal to deliver.

4. " The plaintiff can not recover in this case, unless the jury find from the evidence that the goods described in the petition were delivered to the St. Louis and St. Paul Packet Company, the defendant at La Crosse, Wis., and that the defendant, the St. Louis and St. Paul Packet Company, received them there to transport them to St. Louis and deliver them to plaintiff.

5. " The jury is instructed that this suit is based upon an alleged contract whereby it is claimed by plaintiff that defendant, the St. Louis and St. Paul Packet Company, received his goods at La Crosse, Wis., and agreed to carry

them to St. Louis, and deliver them to plaintiff; and the court instructs the jury that the burden of proving this contract by affirmative proof is on the plaintiff, and unless they find from the evidence such proof, they will find for defendant.''

If defendant was a common carrier, and by its authorized agents agreed with plaintiff to transport his goods from La Crosse to St. Louis, and in accordance with such agreement received them at La Crosse, it is liable for the reasonable value of the goods at St. Louis if it failed to deliver them to plaintiff there, and was not hindered by the act of God or the public enemy. And defendant can not escape its responsibility by showing that it employed means of transportation furnished to it by others. *Bank of Kentucky* v. *Adams Express Co.*, 93 U. S. 174. So that it is immaterial whether the Arkansas belonged to defendant's line or not, or whether her barge belonged to defendant, if defendant, having agreed to transport plaintiff's goods, used the Arkansas for that purpose, and she was a boat ordinarily employed for the business of another line.

We have nothing to do with the weight of the evidence or the credibility of the witnesses. It seems that the case was fairly put to the jury by the instructions given, and that there was substantial evidence to support the verdict.

It appears from the record that the case has been twice tried, and two verdicts have been rendered for plaintiff upon the pleadings as they are. The petition contains allegations sufficient to hold defendant upon the common-law obligation of a carrier. After verdict it seems to be good enough. The case was not put to the jury upon any theory of conversion.

Instructions 1 and 2 for plaintiff seem to go upon the theory that, if the agents of the St. Paul Passenger and Freight Line directed the captain of the War Eagle, a boat of defendant's line, or generally directed the agents of defendant's line, to receive these goods and transport them

to St. Louis, and defendant, in consequence of such directions, assumed control of these goods, and undertook to transport them from La Crosse to St. Louis, and defendant. authorized or permitted the officers of a boat not of defendant's line to carry these goods for defendant, and assumed control of the goods on their arrival at St. Louis, then defendant may be liable, though it appears that the boat that actually carried the goods was not controlled or run by defendant. We see no objection to this instruction. It would be a presumption of law, in the absence of any proof to the contrary, that the owner of the goods really made the contract with the carrier, and that any other persons employing the carrier acted as agent of the owner in the matter.    Griffith v. Ingledew, 6 S. & R. 429.

It is objected that the court erred in permitting plaintiff to state his conversations with the clerk on the wharf-boat, and in permitting Mrs. Austin to state her conversation with the person in charge of the steamboat office at La Crosse.    As to the first objection, we think that there was sufficient evidence of agency to warrant the admission of the conversation.    This clerk made out the bill for the freight of these goods in defendant's name ; and, before he repeated the conversation, the witness stated that this clerk was, at the time, the general clerk on defendant's wharf-boat, then engaged in receiving freight.    The other conversation seems to have been excluded.    The conversation between Mrs. Austin and the captain of the War Eagle was competent, because there was testimony tending to show that he was at the time captain of a boat on defendant's line, and that to him plaintiff had been referred by defendant as one authorized to act for defendant in this matter.

We see no sufficient ground for interfering with the judgment.    Judgment affirmed.    All the judges concur.