MISSOURI, KANSAS & TEXAS RAILWAY CO. vs PATRICK.

Opinion delivered October 19, 1904.

1. *Railroads—Loss of Goods—Liability For—Limited by Bill of Lading—Not if Unsigned.*

> The liability of a railroad for loss of goods is only limited by special stipulations in a Bill of Lading when same is signed by the carrier's agent; but where unsigned and delivered to a shipper who could neither read nor write, and no proof of a verbal contract of shipment, the carrier is liable for the value of the goods.

2. *Pleading—Amendment—During Trial.*

> Under Sec. 5080 Mansf. Dig. providing for the amendment of pleadings at any time in furtherance of justice and to conform same to the facts proved, it was not error for the court to allow, during a trial, an amendment of complaint stating that a bill of lading was not signed when it so appeared from the proof.

Appeal from the United States Court for the Central District.

WM. H. H. CLAYTON, Judge.

Action by W. G. Patrick against the Missouri, Kansas & Texas Railway Company. Judgment for plaintiff. Defendant appeals. Affirmed.

W. G. PATRICK,
vs
MISSOURI, KANSAS & TEXAS RAILWAY CO. } 397

Being an Appeal from the Central District of Indian Territory at South McAlester.

## Statement of Facts.

On August 3, 1900, the plaintiff filed with G. T. Ralls, United States Commissioner, a complaint, and alleged that defendant, as a common carrier, received from the plaintiff at South Canadian, on September 22, 1899, two certain boxes or packages for shipment, consigned to the plaintiff at Durant, Indian Territory, of the value of sixty and forty-hundredths dollars, as shown by account hereto attached, marked Exhibit A, and made a part of the complaint; plaintiff says that twenty four hours was a reasonable time for the delivery of the goods at Durant; that he had called for said goods at various times; that defendant had failed and refused to deliver the same, to his damage in the sum of $60.40; wherefore, plaintiff asks judgment against the defendant for said sum and costs. Summons was issued, returnable September 3, 1900. On the same day, the defendant filed its motion to require plaintiff to make his complaint more definite and certain, and to allege whether the contract under which the goods claimed by plaintiff was shipped, was verbal or in writing, and if in writing that plaintiff be required to attach his original shipping contract to his complaint. Motion was sustained, and amendment made by interlineation as follows: "And said company made its bill of lading for said property which is filed herewith as Exhibit B." And on the same day defendant filed its answer, and admits that it received from the plaintiff at South Canadian, Indian Territory, on or about September 22, 1899, two boxes or packages for shipment, and admits that the same were consigned to the plaintiff at Durant, Indian Territory, but denies that they were of the value of $60.40 or other sum; denies that a reasonable time for the delivery of said goods at Durant would not exceed twenty-four hours; denies that the plaintiff had called for the same or the defendant refused to deliver the same; the defendant further answering states that said boxes "were received by this defendant for shipment by virtue of a written contract, a copy of which

is hereto attached, marked Ex. A, and made a part of this answer; that said contract was entered into on the 22nd of September, 1899, between the plaintiff and the defendant   *   *   * it being provided in said contract that in the event of any loss or damage thereto, the liability of the defendant railway company should be limited to the sum of five dollars per hundred weight *   *   *   that under the terms of the contract aforesaid the measure of damages, if any, in this case, should be five dollars per hundred weight."

Defendant states that the weight of said two boxes was 150 pounds; that said written contract provided that any claim which the plaintiff might have or prefer against the defendant should be presented to some general officer or agent of said company within thirty days after the loss or damage had been sustained; that defendant had a station agent at South Canadian and at Durant, Indian Territory, to whom such claims might have been presented, but that plaintiff failed to present any such claim within said period of thirty days; further states that the failure to receive the goods was not due to any negligence of the defendant, and was due to the negligence of the plaintiff, and asks judgment for its costs.

Said cause was tried by said United States Commissioner on the 3rd day of September, 1900, and verdict and judgment had for plaintiff for $60.40, from which the defendant appealed to the United States Court, Central district, at Atoka. On February 13, 1901, petition for change of venue was filed by defendant, and said cause was transferred to the United States Court at South McAlester, Indian Territory; that on June 6, 1901, the same being a day of the regular May 1901 term of said court, this cause came on for trial; the same was tried by a jury, and after the introduction of evidence the plaintiff was permitted to amend his complaint by adding the words, "which bill of lad-

ing was not signed," to which amendment the defendant at the time excepted, and thereupon the court instructed the jury to return a verdict for the plaintiff, and the jury returned the following verdict: "We the jury duly empaneled and sworn to try the issue in the above entitled cause, do find the issues in favor of the plaintiff and assess his damages at sixty and forty hundredths dollars. (Signed)    William T. Thurman, Foreman."

That on June 8th, 1901, the defendant filed its motion for a new trial, and on the 10th day of June, 1901, "the court having seen and heard said motion, and being well and truly advised in the premises, doth overrule the same, to which ruling of the court the defendant then and there in open court excepted." Whereupon judgment was rendered in favor of the plaintiff, against the defendant, for $60.40, with interest thereon at the rate of six per cent per annum from this date until paid, together with his costs; that on the same day defendant was allowed sixty days in which to file his bill of exceptions, and that in the meantime execution under the judgment be suspended; said bill of exceptions was filed with the clerk of said court on the 21st day of June, 1901, and on the 18th day of July, 1901, upon the application of the defendant, an appeal was granted to the United States Court of Appeals for the Indian Territory, by William P. Freeman, Clerk of the said United States Court of Appeals; on the 15th day of July, 1901, a supersedeas bond was executed by the defendant, and the case was thus appealed to this court.

Clifford L. Jackson,
Attorney for Appellant,
Fortune & Fort, and L. D. Horton,
Attorneys for Appellee.
Opinion.

TOWNSEND, J.

The appellant in this case, the defendant below, has filed four specifications of error, which are as follows:

1.   The court below erred in refusing to instruct the jury to return a verdict for the defendant as requested.

2.   The court below erred in refusing to give the following instructions asked by the defendant:

"The court instructs the jury that even if you should find the defendant liable in this case under the other instructions of the court, then you are further instructed that in assessing the damages of the plaintiff you cannot fix a higher valuation upon the goods in question than at the rate of five dollars per hundred weight."

3.   The court erred in instruction the jury as follows:

"You are instructed to find your verdict for the plaintiff and to assess his damages at the sum of $60.40."

4.   The court erred in overruling defendant's motion for a new trial.

It is hardly necessary to notice or discuss any other than the second specification of error, the defendant contending "that the contract governing the shipment of goods in controversy was in writing, and fairly limited the value of the goods, and the jury should have been so instructed, and should not have been instructed to assess the damages of the plaintiff below at the full amount sued for, and because of the error of the trial court in these respects, the motion for a new trial should have been granted."

The question is thus fairly presented as to whether the paper which was attached to the plaintiff's complaint on motion

of the defendant, and subsequently set forth as an exhibit to the answer of the defendant, constituted a bill of lading under the law.

The appellant in his brief says, "this bill of lading was not a bill of lading in accordance with the technical commercial law in that the agent of the carrier failed to sign it." The only effect that could be attached to the failure of the agent to sign a bill of lading would be that it would not be negotiable on the market, in accordance with the mercantile usage, but the failure of the agent to attach his signature could not even have had that effect in this instance, because in the bill of lading was a stipulation as follows: "Not negotiable unless shipment be consigned to shipper's order."

Is this statement correct? This paper purports in the first instance to be a receipt for the two boxes of household goods. Is a receipt that is unsigned a valid receipt? It also purports to contain a stipulation of a special contract, but when the same has not been signed by the appellant's agent, and there is no evidence that the plaintiff has ever assented to the special stipulation thus set up, is it such a contract as would bind either the appellant or the appellee?

Mattie Patrick, the wife of the appellee, in her deposition introduced in evidence, as shown by the bill of exceptions, states as follows:

"The porter took the goods out of the wagon and put them on the platform of the depot at South Canadian and afterward he gave me a bill of lading; I asked the agent to give me a bill of lading; when I first asked him he said it was no use, that the goods would come on the local behind me; I insisted that he give me a bill of lading, which he did, and I afterward delivered same

to my husband  *  *  *  I cannot read or write, but the paper which the agent gave me as a bill of lading was the one I turned over to Mr. Patrick  *  *  *  The agent did not read the bill of lading to me nor explain its contents to me, and failed to put the war revenue on it, but afterwards called me back and put the revenue stamp on it."

It thus appears, if the contention of the appellant is to be sustained, that this paper, which purports to be a receipt, and also containing a special contract, though not signed by the appellants agent, and delivered to the agent of the shipper, who could not read or write, to whom the contents were not known, is a bill of lading, and limits the common law liability of the appellant.

Hutchinson on Carriers, Second Edition, § 120, in defining a bill of lading, says:

"These contracts assume somewhat different forms and are known by different names according as they may be with carriers by water or carriers by land.  Those with the former are called bills of lading, while those with land carriers are commonly called receipts.  They are, however, the same in effect, and are intended merely to evidence the true intent of the transaction between the parties  *  *  *  They must be *signed* by the carrier or his authorized agent to bind him, and must be accepted by the shipper.  And any contract with the carrier having these characteristics is entitled to the effect of a bill of lading, no matter how informally it may be drawn."

In The Tongoy, 55 Federal Reporter, 329, a bill of lading is defined as follows:

"Now a bill of lading is a written acknowledgment, *signed* by the master, that he has received the goods therein described

from the shippers to be transported on the terms therein expressed. It is a receipt for the quantity of goods shipped and a promise to transport and deliver them as therein stipulated."

The 4th Am. & Eng. Enc. of Law says, "A bill of lading must be *signed* by or on behalf of the party undertaking the carriage, but need not be, and generally is not, signed by the party shipping.

(Citing Porter on Bills of Lading).

"A bill of lading is a memorandum or acknowledgment in writing, *signed* by the captain or master of a ship or other vessel, that he has received in good order, on board of his ship or vessel therein named, at the place therein mentioned, certain goods therein specified, etc."

Rapalje & Mack's Digest of Railway Law, vol. 1, p. 601, citing 34 Ind. 1.

In the case of "The Delaware," Justice Clifford, in delivering the opinion of the court, says:

"Different definitions of the commercial instrument, called the bill of lading, have been given by different courts and jurists, but the correct one appears to be that it is a written acknowledgment, signed by the master, that he has received the goods therein described from the shipper, to be transported on the terms therein expressed, to the described place of destination, and there to be delivered to the consignee or parties therein designated." 81 U. S., p. 600.

"Bills of Lading are usually on printed forms and *signed* by the carrier or his agent." Elliott on Railroads, Sec. 1417, vol. 4, p. 2200.

In Montague, et al., vs Hyde, 82 Federal Reporter, page 682, the court says:

"A bill of lading is an instrument well known to the commercial law, and according to mercantile usage is signed only by the master of the ship, or other agent of the carrier, and delivered to the shipper. When thus signed and delivered, it constitutes not only a formal acknowledgment of the receipt of the goods therein described, but also the contract for the carriage of such goods, and defines the extent of the obligations assumed by the carrier. The Delaware, 14 Wall. 579. In my opinion, the rule which governs the point now under consideration is that a common carrier may, by special contract with the shipper, stipulate for a more limited liability than that which he assumes under the ordinary contract for the carriage of goods; and such special contract, in the absence of any statute to the contrary, may be contained in a bill of lading signed by the carrier alone; and the acceptance of such bill of lading by the shipper at the time of the delivery of his goods for shipment, in the absence of fraud on the part of the carrier, is sufficient to show the assent of the shipper to the terms set out in the bill of lading. It is the rule, rather than the exception, for common carriers to stipulate for a release from the stringent liability of an insurer, and which otherwise the law would impose upon them; and according to the customary course of business such stipulations are contained in the bill of lading issued by the carrier. This custom is so general that all persons receiving such bills of lading must be presumed to know of such custom, and they are also charged with the knowledge that it is one of the offices of such instruments to state the terms and conditions upon which the goods therein described are to be carried; and for this reason the acceptance of such a paper by the shipper, without dissent, at the time of the delivery of his goods for shipment, when no fraud or imposition has been practiced upon him, is to be regarded as conclusive evidence

that he agrees to be bound by all lawful stipulations contained in such bill of lading, and this I understand to be the rule sustained by the Supreme Court of the United States in the case of Bank of Kentucky vs Adams Express Co., 93 U. S. 174, and is supported by the following well considered cases: Kirkland vs Dinsmore, 62 N. Y. 171; Grace vs Adams, 100 Mass., 505; Dorr vs Navigation Co., 11 N. Y., 485; Railroad Co. vs Pontius, 19 Ohio St. 221; McMillan vs Railroad Co. 16 Mich. 79. In the case last cited, Mr. Justice Cooley, speaking for the court, said:

'Bills of lading are signed by the carrier only; and, where a contract is to be signed only by one party, the evidence of assent to its terms by the other party consists usually in his receiving and acting upon it. This is the case with deeds poll, and with various classes of familiar contracts; and the evidence of assent derived from the acceptance of the contract without objection is commonly conclusive. I do not percieve that bills of lading stand upon any different footing.' "

Am. & Eng. of Law, vol. 4, 2d Ed., p. 514: A bill of lading, though signed, can have no effect until delivery.

It thus appears that if a bill of lading is issued by a common carrier, it must be signed by it, in order to make the same a binding contract between itself and the shipper. The appellant has cited numerous authorities to establish the proposition that a common carrier can limit its liability without any written bill of lading. There is no question but that a verbal contract can be made, and the only serious objection to it is the difficulty of proving the same, in the event of controversy between the shipper and the carrier. When a common carrier seeks to limit its common law liability, the law interposes no objection, but such a contract must be clearly established.

"In the absence of a statute to the contrary, no particular form or mode is required to constitute such a contract as will be binding upon the carrier's employers. * * * Whenever, however, it appears that what has been proposed on one side has been accepted by the other, a contract is proven which will be mutually binding, whether the proposition is made in the form of notice or in any other manner. But the proof of assent to the terms proposed by the carrier must be clear in such a case, for the law having imposed an important duty upon him, upon grounds of public policy, will not permit him to divest himself of its responsibilities and throw the loss upon his employer, when the proof that the latter has so agreed, is doubtful. But it is not required that such proof, if otherwise satisfactory, shall be written. A verbal contract is as obligatory as a written one when established. The only difference is in the manner and in the degree of certainty of the proof."

Hutchinson on Carriers, 2 Ed., Section 242.

"A special contract limiting the liability of the carrier as an insurer may be verbal as well as written, unless the statute requires it to be in writing. It may be more difficult to establish a specific parol contract, but when once clearly established it is as obligatory as a written one. Of course, where there is a complete written contract it can not, as a rule, be contradicted or varied by oral evidence, and all verbal agreements made prior to the execution of the bill of lading, are usually merged therein; but, as we have seen, there are cases in which, after the carrier has once accepted and shipped the goods under an unconditional parol contract, it cannot afterwards limit its liability by a receipt or bill of lading; and, so, on the other hand, after a receipt or bill of lading has been executed, a new contract may doubtless be made, in parol, upon a new consideration, whereby the liability of the carrier may be properly limited or other changes made in

the terms of the original contract." Elliott on Railroads, vol. 4, Sec. 1503.

The appellant has also introduced authorities to establish the proposition that the acceptance of a bill of lading by a shipper, without any objection, when the same is issued by the carrier, binds the shipper to all limitations of liability embraced in said bill of lading.

"According to the English cases and the clear preponderance of authority in the United States, if a bill of lading is accepted by the shipper, without objection, he is ordinarily, i. e., in the absence of fraud, accident or mistake, presumed to have knowledge of and to have assented to its terms, and he cannot afterwards be heard to say that he did not read it, but will be bound thereby. And the general rule is that prior negotiations cannot be resorted to for the purpose of varying the terms of the instrument." Am. & Eng. Enc. of Law, vol. 4 (2d Ed.) pp. 516. 517.

But the paper issued and denominated a bill of lading in the case at bar was never signed by the carrier, and by reason of that fact it was not a bill of lading, and consequently, pretended limitations of liability stated therein were not binding on the appellee, and none of its provisions were binding on either the carrier or the shipper. Therefore, there is no evidence that any verbal or written contract was made between the parties, limiting the common law liability of the carrier.

The suit, as originally instituted, contained no statement about this pretended bill of lading, it was first disclosed on the granting of a motion by the United States Commissioner, made by the appellant, to make the complaint more definite and certain, and was inserted in the complaint by way of interlineation.

The appellant answered insisting that its liability had been limited, but when the case was tried in the District Court, the discovery was made that the pretended bill of lading had never been signed, and the court allowed an amendment to the complaint to make same correspond to the proof in the case, which he was authorized to do by Sec. 5080, Mansfield's Digest, as follows:

"The court may, at any time, in furtherance of justice, and on such terms as may be proper, amend any pleadings or proceeding by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect, or by inserting other allegations material to the case; or, when the amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved."

This simply placed the suit where it was, when instituted before the Commissioner, and before the error was committed by the Commissioner, requiring the plaintiff to produce the pretended bill of lading. The appellant, admitting that it had received the goods and had failed to deliver the same, the court very properly directed the jury to return a verdict for the plaintiff. We think the judgment of the court below was correct, and it is therefore affirmed.

RAYMOND, C. J. and GILL, J., concur.