DESPEAUX et al. v. PENNSYLVANIA R. CO.

(Circuit Court, E. D. Pennsylvania. December 30, 1904.)

No. 44.

1. CARRIERS—DISCRIMINATION—OVERCHARGES—PLEADING—AMENDMENT — LIMI-
TATIONS.

Where plaintiffs filed a statement of claim in assumpsit against a rail-
road company in two counts to recover for alleged unlawful discrimination
in the transportation of freight, as authorized by the Pennsylvania act of
June 4, 1883 (P. L. 72), they were not entitled, 14 years thereafter, to file
an amendment charging defendants with a common-law liability, on the
ground that the charges made were unreasonable and constituted an over-
charge; the latter being a new cause of action, different from that
originally alleged, and barred by limitations.

Petition to Amend Dismissed.

James W. M. Newlin, for plaintiffs.
John Hampton Barnes, for defendant.

HOLLAND, District Judge. On February 28, 1890, summons in
assumpsit was directed to be issued in the above case, and on February
10, 1892, a statement of claim was filed to recover 13 cents per barrel
on 1,263,231 barrels shipped by plaintiffs on defendant's railway be-
tween August 25, 1883, and December 27, 1889, upon which it is al-
leged that "the defendant did then and there, during all the time
aforesaid, unduly, unreasonably, and unlawfully discriminate against
them, the plaintiffs, in the transportation of said merchandise, in this:
that the defendant, to the great injury and damage of the plaintiffs, did
charge, demand, collect, and receive from the plaintiffs for the trans-
portation of said merchandise a sum in excess of that charged and
collected by the defendant from others for like conditions, under simi-
lar circumstances, and during the same period of time." In the sec-
ond count of the plaintiffs' claim the same cause of action is set forth,
and treble damages claimed under the act of Assembly of the common-
wealth of Pennsylvania approved June 4, 1883 (P. L. 72), entitled "An
act to enforce provisions of the seventeenth article of the Constitution
relative to railroads and canals." Both counts, however, are drawn
under this act for unlawful discrimination in the transportation of
freight "upon like conditions, under similar circumstances, and during
the same period of time." On July 14, 1904—fourteen years after the
cause of action had accrued—the plaintiffs ask leave of court to amend
this statement as follows:

"The plaintiffs say the defendant did then and there, and during all the
time aforesaid (to wit, between the 25th day of August, 1883, and 27th day
of December, 1889), unduly and unreasonably charge excessive freight to the
said plaintiffs for the transportation of said merchandise, in this: that the
defendant, to the great injury and damage of the plaintiffs, did charge, de-
mand, collect, and receive from the plaintiffs for the transportation of the
said merchandise a sum equal to twenty-two and one-half cents per barrel in
excess of a reasonable charge for the said carriage. The excess of freight
thus charged over and above a reasonable charge therefor amounts to and is
the sum of $284,226.97½."

This amendment should be allowed, unless it introduces an entirely new cause of action which is barred by the statute of limitations, and this, in the opinion of the court, would be the effect. In the original statement it will be seen the plaintiffs claim damage for an injury resulting to them by reason of an unlawful discrimination in charges between them and other shippers, and it is now proposed to amend this statement to permit them to recover for an excessive charge of freight during the period mentioned, which is a totally different cause of action from that of an unlawful discrimination, as that may or may not be an excessive charge, in other words, an unlawful discrimination, either at common law, or under the Pennsylvania statute, may be an entirely reasonable rate of freight, but, as compared with charges made to others, unlawful, because of the injury resulting to the plaintiffs by reason of a lower rate allowed to competitors for the transportation of merchandise upon like conditions, under similar circumstances, and during the same period of time. An overcharge is an injury upon which a recovery can be had without regard to the question of discrimination. They are different and distinct causes of action, and the fact urged by the plaintiffs that evidence of lower freight rates to others would be competent evidence in the trial of a case for overcharges does not establish the proposition that the causes of action are identical. The narr. or pleadings determine the evidence relevant in the case, and the fact that it may be, to some extent, the same in both causes, of action, is no test of their legal identity. The true criterion, as all the authorities show, says Sharswood, J., is, "did the plaintiff so state his cause of action originally as to show that he had a legal right to recover what he subsequently claimed?" Wilhelm's Appeal, 79 Pa. 120. The plaintiffs in this case now claim for an overcharge on freight, and to support that contention they will be required to show, the defendant charged more than a reasonable compensation for the service of transportation, whereas in their original claim for unlawful, discrimination the question of reasonableness of the freight rate would be immaterial. The right to recover would depend upon the plaintiffs' ability to show that the defendant charged a less rate to some one else, for like service, regardless of the question as to whether it was excessive or not.

In the case of the Union Pacific Railway Company v. Wyler, 158 U. S. 285, 15 Sup. Ct. 877, 39 L. Ed. 983, the Supreme Court held that:

"A declaration for personal injury, based upon the general or common law of master and servant, could not be amended, after the statute of limitation had run, so as to make the railroad company liable under a statute of the state, of Kansas giving the employé in such a case a right of action against the company in derogation of the common law."

It is there held to be an introduction of a new cause of action in attempting to change from the common law to the statute law of Kansas, while in the case at bar it is an attempt to change from the statute law, of Pennsylvania to the common law; although it may be said that the, case is not entirely in point because of the fact that the cause of action set forth in the Pennsylvania statute is only declaratory of the common-law liability for unlawful discrimination. But whether the original,

cause of action, to wit, unlawful discrimination, be considered a statutory or common-law liability, it is entirely a different cause of action from that of an overcharge, and the cases cited in Union Pacific Railway Company v. Wyler, supra, by Justice White, are entirely in point.

The petitioners, however, assert that when suit was brought and a declaration filed it was not judicially determined that the common law constituted a part of the jurisdiction of the courts of the United States, and that it had not been determined that the persons situated like the plaintiffs could, as against the defendant, enforce a common-law right, and for that reason the statement was filed, and the cause based on the Pennsylvania statute. The Supreme Court of the United States, in the case of the Western Union Telegraph Company v. Call Publishing Company, 181 U. S. 92, 21 Sup. Ct. 561, 45 L. Ed. 765 (decided in 1901), holds that the principles of common law are operative upon all interstate commercial transactions, except so far as they are modified by congressional enactment; and Justice Brewer, in deciding the case, says:

"This question is not a new one in this court. In Interstate Commerce Commission v. Baltimore & Ohio Railroad, 145 U. S. 263, 275, 12 Sup. Ct. 844, 36 L. Ed. 699—a case which involved interstate commerce—it was said by Justice Brown, speaking for the court: 'Prior to the enactment of the act of February 4, 1887, to regulate commerce, commonly known as the "Interstate Commerce Act" (24 Stat. 379, c. 104 [U. S. Comp. St. 1901, p. 3154]), railway traffic in this country was regulated by the principles of common law applicable to common carriers.' In Bank of Kentucky v. Adams Express Co., and Planters' Bank v. Express Co., 93 U. S. 174, 177, 23 L. Ed. 872 (decided in 1876), the express companies received at New Orleans certain packages for delivery at Louisville. These were interstate shipments. In the course of transit the packages were destroyed by fire, and actions were brought to recover the value thereof. The companies defended on the ground of an exemption from liability created by the contracts under which they transported the packages. Justice Strong, delivering the opinion of the court, after describing the business in which the companies were engaged, said: 'Such being the business and occupation of the defendants, they are to be regarded as common carriers, and, in the absence of stipulations to the contrary, subject to all the legal responsibilities of such carriers.' The whole argument of the opinion proceeds upon the assumption that the common-law rule in respect to common carriers controlled."

In the case of Murray v. The Chicago & Northwestern Railway (C. C.) 62 Fed. 24, District Judge Shiras, in an elaborate opinion delivered in 1894, collated a number of extracts from the opinions of the Supreme Court, all tending to show that there was always a recognition of a general common law existing throughout the United States; not, it is true, as a body of law distinct from common law enforced in the states, but as containing the general rules and principles by which all transactions are controlled, except so far as those rules and principles are set aside by express statute; and Justice Brewer, in Western Union Telegraph Co. v. Call Publishing Co., supra, refers to this opinion with approval.

The request of the plaintiffs to amend in this particular is refused, and the petition dismissed. The plaintiffs, however, are allowed to amend the original declaration as to the amounts claimed as per petition filed November 14, 1904.