## Case No. 6,692.

### HOPKINS v. WESTCOTT et al.

[6 Blatchf. 64;[1] 7 Am. Law Reg. (N. S.) 533.]

Circuit Court, S. D. New York. March 9, 1868.

**COMMON CARRIER—BAGGAGE—RESTRICTION OF LIABILITY—NOTICE OF, TO PASSENGER.**

1. Where A., a passenger on a railroad, delivered to a carrier a metallic check, which he had received for his trunk, as baggage, so that the carrier might obtain the trunk, and deliver it at the residence of A., and received from the carrier, at the time, a paper, on which the number of the check was indorsed, and which contained a printed notice, that the carrier would "not become liable for merchandise or jewelry contained in baggage received upon baggage checks, nor for loss by fire, nor for an amount exceeding one hundred dollars, upon any article, unless specially agreed for, in writing, on this check receipt, and the extra risk paid therefor," and a statement that the owner thereby agreed that the carrier should be liable only as above: *Held,* that A. was chargeable with actual notice of the contents of the paper.

[Cited in Davis v. Massachusetts Mut. Life Ins. Co., Case No. 3,642; Wertheimer v. Pennsylvania R. Co., 1 Fed. 233.]

[Criticised in Blossom v. Dodd, 43 N. Y. 268. Cited in Mulligan v. Illinois Cent. Ry. Co., 36 Iowa, 189.]

2. *Held,* also, that, by such paper, the responsibility of the carrier was qualified, to the effect stated in the paper.

[Cited in Bank of Kentucky v. Adams Exp. Co., 93 U. S. 188; Muser v. American Exp. Co., 1 Fed. 383; The Hadji, 18 Fed. 461; Hart v. Pennsylvania R. Co., 112 U. S. 342, 5 Sup. Ct. 156.]

3. The language of such a paper must, where there is any doubt as to its meaning, be construed strictly against the carrier.

4. The words "any article," in such paper, do not mean a trunk, or piece of baggage, and its entire contents, in gross, but mean any article contained in the piece of baggage.

5. Manuscript books, the property of a student, and necessary to the prosecution of his studies, are to be regarded as baggage.

[Cited in Fraloff v. New York Cent. & H. R. R. Co., Case No. 5,026.]

[Quoted in Gleason v. Goodrich Transp. Co., 32 Wis. 99.]

This was an action at law [by Archibald Hopkins against Alexander F. Westcott and others], tried before the court without a jury. The facts are sufficiently stated in the opinion of the court.

William C. Whitney, for plaintiff.
Luke A. Lockwood, for defendants.

SHIPMAN, District Judge. The defendants constitute the Westcott Express Company, and are carriers, for the public, of freight and baggage, for hire, to and from any points in the city of New York. On the 1st of October, 1866, the plaintiff passed from his home in Massachusetts, over the Hudson River Railroad, to the city of New York, together with his trunk, for which he received the usual metallic check, which, on his arrival at New York, he delivered to the

defendants, to enable them to obtain the trunk at the depot, and deliver the same at his residence in the city, no rate of compensation being named. The defendants obtained the trunk, but failed to deliver it to the plaintiff, it having been lost, in some way unknown to the defendants and to the plaintiff. Upon the delivery of the metallic check to the defendants, they delivered to the plaintiff a paper, upon which the number of the check was endorsed, and which contained, also, the following printed matter: "The Westcott Express Co. will not become liable for merchandise or jewelry contained in baggage received upon baggage checks, nor for loss by fire, nor for an amount exceeding one hundred dollars, upon any article, unless specially agreed for in writing, on this check receipt, and the extra risk paid therefor. * * * And the owner hereby agrees that Westcott Express Co. shall be liable only as above." This printed matter the plaintiff did not read at the time it was delivered to him, nor till after notice, from the defendants, that his trunk was lost. The general custom of express companies is, to charge forty cents for every trunk, and twenty-five cents in addition for every $100 of value beyond $100. The defendant was ignorant of this custom. The defendant was a student at Columbia College, and was proceeding to New York, for the purpose of prosecuting his studies at that institution; and certain manuscript books, which formed part of the contents of his trunk, were necessary to the prosecution of his studies.

The discussion of this case, at bar, took a wide range, and a considerable number of the many cases, relating to the general question, how far, and in what manner, a carrier may limit or qualify the liability which the general rules of the common law impose upon him, were cited. I shall not here enter upon a review of the authorities touching this broad question. It has been remarked, by a learned and accurate writer, that "a common carrier may qualify his liability, by a general notice to all who may employ him, of any reasonable requisition to be observed on their part, in regard to the manner of delivery and entry of parcels, and the information to be given to him of their contents, the rates of freight, and the like; as, for example, that he will not be liable for goods above the value of a certain sum, unless they are entered as such, and paid for accordingly." 2 Greenl. Ev. § 215. But, in the case now before the court, the defence does not rest upon a general notice, with constructive knowledge of which the plaintiff is to be charged, by proof that it was generally and widely promulgated. It rests on a special printed notice, put into the hands of the plaintiff, at the time he delivered his check to the defendants. It can make no difference that the plaintiff did not choose to read it until after he had notice that his trunk was lost. He received it at the time he parted with his check, it was

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

legibly printed, and he must be charged with actual notice of its contents. By its terms, it qualified the duty or liability of the defendants, and limited their responsibility, in case of loss, to an amount not exceeding $100 for any article, unless the plaintiff should disclose such articles, and have the fact endorsed on the paper, as well as pay for the extra risk. It excluded all liability for merchandise and jewelry. Though, as will be seen in the sequel, this point is of no practical importance in this suit, in view of the construction which I shall give to this notice, yet I am unwilling to leave it to be inferred that I entertain any doubt of the power of the carrier to qualify his responsibility by special notice, actually given to the owner, under circumstances like these. In Orange County Bank v. Brown, 9 Wend. 85, 115, Judge Nelson, speaking for the court, says, of the carrier: "If he has given general notice that he will not be liable over a certain amount, unless the value is made known to him at the time of delivery, and a premium for insurance paid, such notice, if brought home to the knowledge of the owner, (and courts and juries are liberal in inferring such knowledge from the publication of the notice,) is as effectual, in qualifying the acceptance of the goods, as a special agreement, and the owner, at his peril, must disclose the value, and pay the premium." In the case before us, we are not left to a general notice, to be charged upon the plaintiff on the ground of its general publication, and which he might have forgotten, although he had seen it; but the notice was served upon him at the time he sought the services of the carrier. I can have no doubt, therefore, that the plaintiff was bound by the notice, and that the carrier incurred no responsibility which his notice, properly construed, excluded.

But here a more difficult question presents itself. The list of the contents of this trunk, and the value of each article thereof, are agreed to by the parties; and they amount, in the aggregate, to $744.10. It was contended, on the argument, that the notice limited the liability of the carrier to $100, unless a greater value was disclosed, and that, as no greater value was disclosed, judgment should be rendered for that sum only. But, so far from giving this notice a liberal construction in favor of the carrier, I am inclined to construe it strictly against him. The rule which holds carriers to strict responsibility is founded upon high considerations of public policy and the security of the property of travelers. Every limitation of this responsibility should be expressed, in each case, in clear and unequivocal terms. Notices of this character should, therefore, be construed strictly against the carrier. They are given to travelers of all ages and sexes, in the bustle of rapid transit from one place to another, in crowded vehicles and depots, and they should be free from all doubt or ambiguity, so that their contents may be clearly apprehended at a glance. Now, some portions of the defendants' notice in this case are clear and explicit. It declares that they will not be responsible for merchandise or jewelry contained in baggage received upon baggage checks. They do not choose to engage in the transportation of such articles as baggage, no matter what their value. They further give notice, that they will not be liable for losses by fire. Where there is no question of gross or willful neglect, or recklessness, or malfeasance or misfeasance, these restrictions, being plainly expressed, and communicated to the owner at the time of the engagement, are without doubt, binding upon him. But, after designating merchandise and jewelry, and exempting them as well as losses by fire, the notice adds: "Nor for an amount exceeding one hundred dollars upon any article, unless specially agreed for in writing on this check-receipt, and the extra risk paid therefor." The question arises, whether the term, "any article," refers to a trunk or piece of baggage, and its entire contents in gross, or whether it is to be confined to each separate article contained therein. In other words, does it limit the liability of the carrier for the loss of a trunk and its contents or does it leave him liable for each article contained in the trunk, according to its value, not exceeding one hundred dollars for any single item. The terms "merchandise" and "jewelry" refer expressly to articles "contained in baggage received upon baggage checks," that is, to the contents of trunks or packages, and excludes liability upon the articles specified. When limiting the liability to one hundred dollars upon any one other article, I think it should be held also to refer to the separate contents of the trunks or packages, and not to the whole in gross. This strict construction is in harmony with the policy of the law, and essential to the protection of the community, in view of the constant devices of carriers to escape the responsibilities of their calling, while their eagerness to obtain the patronage of the public remains unabated. Now, I can well conceive, that they are unwilling to take the risks of carrying expensive articles of dress, such as costly furs, shawls, and other valuable paraphernalia of an extravagant modern wardrobe, a single item of which is often valued at many hundreds of dollars, without notice of value, and without pay for the risk. But, it may well be doubted, whether they intend, by such notices as the one under consideration, to apprise the owner that they decline all responsibility beyond one hundred dollars on each trunk and its contents, unless a special contract is made. A good trunk is worth half that sum, and often more, and the value of an ordinary traveler's trunk and necessary contents would usually exceed that sum. But, whatever be the intentions of carriers, such intentions must be so expressed as to leave no room for doubt as to their meaning, or they cannot

be permitted to qualify their liability as fixed by the general rules of law applicable to their calling. As was remarked by Best, C. J., in Brooke v. Pickwick, 4 Bing. 218: "If coach proprietors wish honestly to limit their responsibility, they ought to announce their terms to every individual who applies to their office, and, at the same time, to place in his hands a printed paper specifying the precise extent of their engagement." And, certainly, where they make no oral communication, but merely thrust into the hand of a traveler a small printed ticket, the notice which that contains should be explicit and leave nothing to be made out by construction. Where there is any doubt as to its meaning, it should be construed strictly, as against the carrier.

As to the general custom of express companies to charge extra for every package over one hundred dollars in value, I do not think that has any bearing on this case. Even admitting that they could change their liabilities by a sweeping custom, (which may well be doubted,) no price was demanded or named in this case, and, therefore, the custom has no bearing upon the controversy.

Among the contents of this trunk were five manuscript books, no one of which exceeded in value one hundred dollars; but the defendants insist that they are not liable at all for these, on the alleged ground that they cannot properly be termed baggage. In Hawkins v. Hoffman, 6 Hill, 586, 589, Judge Bronson remarks: "An agreement to carry ordinary baggage may well be implied from the usual course of business; but the implication cannot be extended a single step beyond such things as the traveler usually has with him as a part of his baggage. It is, undoubtedly, difficult to define with accuracy what shall be deemed 'baggage,' within the rule of the carrier's liability. I do not intend to say that the articles must be such as every man deems essential to his comfort; for, some men carry nothing, or very little, with them when they travel, while others consult their convenience by carrying many things. Nor do I mean to say that the rule is confined to wearing apparel, brushes, razors, writing apparatus and the like, which most persons deem indispensable. If one has books for his instruction or amusement by the way, or carries his gun or fishing tackle, they would undoubtedly fall within the term 'baggage,' because they are usually carried as such. This, I think, is a good test for determining what things fall within the rule." Now, it may safely be said, that books constitute to some extent a part of the baggage of every intelligent traveler. Especially is this the case with scholars, students, and members of the learned professions. There is no reason why they should not be under the protection of the law, as against the negligence of carriers, as well as any other portions of their baggage. But, it is said, that no case can be shown where the carrier has

12FED.CAS.—32

been held liable for manuscripts. No such case has been cited, and, in my researches, I have found none. But I see no reason for adopting a rule by which they should be excluded, under all circumstances, from the list of articles termed "baggage." With the lawyer going to a distant place to attend court, with the author proceeding to his publisher's, with the lecturer traveling to the place where his engagement is to be fulfilled, manuscripts often form, though a small, yet an indispensable, part of his baggage. They are carried, as such, in his trunk or portmanteau, among his other necessary effects. They are indispensable to the object of his journey; and, as they are carried with his baggage, in accordance with universal custom, I see no reason why they should not be deemed as necessary a part of his baggage as his novel or his fishing tackle. In the present case, the manuscript books lost are admitted to have been necessary articles for the student at the institution to which he was proceeding. They must, under all the circumstances, be deemed to have been a part of his baggage, for which the defendants are liable.

There was one article of jewelry in the trunk, for which, of course, they are not responsible, as all jewelry was excepted by specific designation. This will, however, make no difference with the amount of the judgment, as, by the stipulation of the parties, it is not to exceed seven hundred dollars, the sum demanded in the declaration, and the aggregate of the agreed value is seven hundred and forty-four dollars and ten cents. Let judgment be entered for the plaintiff, for seven hundred dollars, with costs.