## MAURITZ *v.* NEW YORK, L. E. & W. R. Co.[1]

*(Circuit Court, E. D. Wisconsin.* November 28, 1884.)

1. CARRIERS OF PASSENGERS — LIMITING LIABILITY FOR LOSS OF BAGGAGE — PRINTED CONDITIONS ON TICKET.

   The liability of a railroad company for the safe carriage of a passenger's baggage is not limited by a notice printed upon the face of the ticket issued by it, stating the terms upon which baggage will be carried, unless the passenger's attention is called to it when purchasing the ticket, or unless the circumstances of the transaction are such as to make the omission of the passenger to read the conditions on the ticket negligence *per se.*

2. SAME—PASSENGER UNABLE TO READ—EXPLANATION BY AGENT.

   Where the passenger is unable to read, and no explanation is made by the agent of the company selling the ticket, he is not bound by the special terms and conditions printed on such ticket.

3. SAME—CONNECTING LINES—DUTY AND LIABILITY—SPECIAL CONTRACT.

   Where a railroad company, whose road connects with other roads, receives baggage for transportation beyond the termination of its own line, it is only

1Reported by Robertson Howard, Esq., of the St. Paul bar.

bound, in the absence of a special contract, to safely carry over its own route, and safely to deliver to the next connecting carrier; but any one of the companies may agree that its liability shall extend over the whole route.

4. SAME—EVIDENCE OF SPECIAL CONTRACT.

The sale of a through ticket is a fact that may be taken into account in determining what the undertaking of the company issuing the ticket was; but such facts and circumstances growing out of the negotiations of the parties, or otherwise arising, ought to be shown, as make it evident that it was the understanding and agreement on both sides that the company selling the ticket undertook to be responsible for the safety of the baggage over connecting lines through to its ultimate destination.

5. SAME—DAMAGES—RECOVERY LIMITED TO VALUE OF BAGGAGE.

A passenger, in the absence of special contract, will only be entitled to recover the value for use of such articles lost, while in transit, as properly constitute baggage; and what articles come within the rule is to be determined according to circumstances.

At Law.

*Wyman & Roehr,* for plaintiff.

*Finches, Lynde & Miller,* for defendant.

DYER, J., (*charging jury.*) This is a suit to recover from the defendant, the New York, Lake Erie & Western Railroad Company, the value of certain lost baggage shipped from New York in June, 1882, over the defendant's line of road and destined for Weyauwega, Wisconsin. Many of the facts relating to the shipment and transportation of the baggage in question are undisputed. It seems that the plaintiff and his family and one Schelongowsky were a party of seven emigrants from Germany, who, on their arrival in New York, desired to obtain transportation for themselves and their luggage to Weyauwega, their point of ultimate destination. To that end the plaintiff's daughter applied to an agent of the defendant, at his office in New York, for passage tickets over the defendant's railroad and connecting lines of road, by means of which they and their baggage should be carried to Wisconsin. As a result of negotiations with the agent, the plaintiff, by his said daughter, purchased three third-class coupon tickets for each person in the party, one of which was a ticket from New York to Chicago over the defendant's road to Salamanca, thence over the New York, Pennsylvania & Ohio Railroad to Mansfield, and thence over the Pittsburgh, Fort Wayne & Chicago Railroad to Chicago. The second ticket in the series was one from Chicago to Milwaukee, over the Chicago, Milwaukee & St. Paul Railway, and the third was a ticket from Milwaukee to Weyauwega, over the Wisconsin Central Railroad. For all the tickets the agent was paid $129.50. These tickets having been procured, the plaintiff and his companions then proceeded to Castle Garden, where their baggage was deposited, and there received checks for the same over the defendant's road and connecting roads to Chicago. The baggage thus checked, including the box in question, was then carried by boat across the river to Jersey City, and there seems to be no doubt that it was placed on the train upon which the plaintiff and his family took passage for Chicago.

When near Chicago, and while yet on board the cars, the plaintiff and his associates surrendered their checks to a railroad official, taking in exchange the checks furnished by that official; and after their arrival at the station, and while they were in the depot waiting-room, they exchanged those checks for six joint checks of the Chicago, Milwaukee & St. Paul and Wisconsin Central roads; these checks being given for the carriage of their luggage from Chicago to Weyauwega. It appears that all of the baggage in due time arrived at Weyauwega, except the box in question, the loss of which has occasioned this suit. It seems that the plaintiff and his companions did not see any of their baggage in Chicago, but the undisputed evidence establishes the fact that it all arrived at the Chicago depot; and that the loss occurred after that time appears quite evident from the fact that all the other pieces of baggage rechecked in the manner before stated, arrived safely at Weyauwega. All of the passage tickets received in New York were labeled, "New York, Lake Erie & Western Railroad Company;" and upon all of them was printed in the English language the following:

"Subject to the following conditions and regulations: In consideration of the reduced fare at which this ticket is sold, it will be valid only for one continuous third-class passage, if used to destination before midnight of the date canceled on the margin of this contract. And this ticket will be good only when officially stamped and dated, and upon presentation with checks attached. The checks belonging to this ticket will not be received if detached, nor will this ticket be recognized for passage if more than one date is punched out. In selling this ticket for passage over other roads this company acts only as agent for them, and assumes no responsibility beyond its own line. None of the companies represented in this ticket will assume any liability on baggage except for wearing apparel, and then only for a sum not exceeding $50 in value. No stop-over allowed."

Each of the tickets stated on its face that it was a "third-class ticket, good for one continuous third-class passage;" the first of the series covering such passage from New York to Chicago; the second, from Chicago to Milwaukee, and the third, from Milwaukee to Weyauwega. The coupons respectively named the different lines of road on which the tickets were receivable, and each coupon was indorsed: "Special ticket; subject to conditions of contract."

The uncontradicted testimony on the part of the plaintiff is that neither the plaintiff, nor his daughter who bought the tickets, nor any of their party, could speak, read, or understand the English language at the time the tickets were purchased; and there is no proof that the agent from whom the tickets were purchased, read or explained to them, or called their attention to the conditions printed on the tickets. The theory upon which the plaintiff seeks to recover in this action is that he made an express verbal contract with the agent of the defendant company for the transportation of himself and his fellow travelers and their luggage from New York to Weyauwega; by which alleged contract he claims the defendant undertook to furnish safe carriage for passengers and baggage, not only over defendant's road,

but over the connecting lines named, to the place of ultimate destination; that it was one entire through contract, creating a liability on the part of the defendant for the safe transportation of baggage as well over the Chicago, Milwaukee & St. Paul and Wisconsin Central roads as over the road of the defendant company, and therefore that the defendant is liable for the loss of the box in question, although that loss may not have occurred on its road.

The contention of the defendant is—*First*, that it did not make such a contract as is alleged by the plaintiff, and that the evidence on the part of the plaintiff does not establish such a contract; *secondly*, that the contract between the parties was expressed on the face of the tickets; that it consisted of the conditions and limitations printed thereon, and that the defendant's liability for baggage was therein limited to loss occurring on its own line, and to wearing apparel not exceeding $50 in value. The issuance of the passage tickets mentioned, their acceptance by the plaintiff, the omission of the defendant's agent to explain to the plaintiff or his daughter who purchased them what was printed on their face, and the inability of the parties who obtained the tickets to read the statements and conditions printed thereon, and their consequent ignorance of the same, being undisputed facts in the case, there seems to be nothing to submit to the jury upon the question whether or not the conditions and regulations expressed on the face of the tickets constituted the contract between the parties. As the question is here presented, it is one of law to be determined by the court.

There are many reported cases in which it has been held that, where the shipper of property over a line of railroad receives from the carrier a bill of lading containing limitations upon its common-law liability, such bill of lading constitutes the contract of shipment, binding upon the shipper, and that he cannot thereafter avoid the limitations of liability expressed therein favor of the carrier, by pleading ignorance of the contents of the bill of lading. This is the principle invoked by the defendant in support of its contention that the tickets issued in this case with the conditions and qualifications of liability thereon expressed, constituted the contract under which the baggage in question was carried. As to railroad passage tickets, there are other decisions which hold that the liability of a railroad company for the safe carriage of a passenger's baggage is not limited by a notice printed upon the face of the ticket issued by it, stating the terms upon which baggage will be carried, unless the passenger's attention is called to it when purchasing the ticket, or unless the circumstances of the transaction are such as to make the omission of the passenger to read the conditions on the ticket negligence, *per se*, that is, such as to make the omission of itself negligence. Thus a distinction is taken between the case of a shipper receiving a bill of lading on account of his shipment, and a traveler receiving a passage ticket for the carriage of himself and baggage over the carrier's road. I think

there is ground for the distinction.   In the one case the shipper is supposed to understand and know that according to commercial usage a bill of lading is essential to the regular and safe transportation of property which is shipped and carried as freight, and that of necessity it must constitute the contract of shipment and carriage.   In the other case, the ticket is ordinarily regarded as a mere voucher for the money paid for it, a token or evidence of the purchaser's right to be carried, or to have his baggage carried a certain distance.   And where, from the undisputed circumstances of the transaction, it is apparent that the passenger rightfully took the ticket as a mere receipt or voucher evidencing his right to be carried, and enabling him to follow and identify his property, and without any notice that it embodied the terms of a special contract, or was intended to subserve any other purpose than that of a voucher, it would seem that his omission to read the paper ought not to be held negligence, and that, as matter of law, he should not be held bound by limitations of which he had no knowledge, and to which, therefore, he did not assent, especially where, as in this case, the purchaser was unable to read the English language, and was ignorant not only of the printed matter on the ticket, but of the ways of business in this country.

Since the decisions of the courts on this subject are not entirely harmonious, I rule upon this question not without some hesitation; but for the purposes of this trial, and subject to review by the full bench, if a review shall become necessary, I instruct you upon the undisputed facts, as developed on this branch of the case, that the plaintiff was not bound by the special terms and conditions printed on these tickets; and that whatever legal rights he may have acquired by his purchase of the tickets are unaffected by those conditions.   The question is then presented, did the agent of the defendant company, by express verbal contract, undertake, in defendant's behalf, with the person who purchased these tickets, to safely carry the baggage in question to Weyauwega,—a point confessedly beyond the termination of the defendant's line,—and there deliver it to the owners?   The law relating to this branch of the case, at least in the federal courts, is this:   If a railroad company, whose road connects with other roads, receives goods for transportation beyond the termination of its own line, its duty is to deliver safely the goods to the next connecting line,—the next carrier on the route beyond.   The common law imposes no greater duty than this.   If more is expected from the company receiving the shipment, there must be a special agreement for it.   Each road confining itself to its common-law liability, is only bound, in the absence of a special contract, to safely carry over its own route, and safely to deliver to the next connecting carrier; but any one of the companies may agree that its liability shall extend over the whole route.   In the absence of a special agreement to that effect, such liability will not attach.   *Myrick* v. *Michigan Cent. R. Co.* 107 U. S. 106;  S. C. 1 Sup. Ct. Rep. 425.   If, there-

fore, the defendant in this case, the New York, Lake Erie & Western Railroad Company, carried the baggage in question safely to Chicago and there delivered it to the next carrier in the line, the Chicago, Milwaukee & St. Paul Railway Company, then it performed its whole duty, unless it specially agreed with the owners of the baggage in New York that it would carry the baggage through, or would undertake or be responsible for its carriage through to its final destination. Did the defendant so contract with the owners of this baggage? If it did not, then it performed its whole duty if it delivered the property safely to the next carrier in Chicago.

Now, the question of fact for you to determine is, did the defendant make such a special agreement with these parties when they purchased their tickets? Such an agreement ought not to be inferred from doubtful expressions or loose language, but only from clear and satisfactory evidence. If, for example, I go to the agent of a railroad company in New York, and ask him if he can sell me tickets for myself and baggage over his line of road and other connecting lines to Ashland, Wisconsin, and he says he can, and he sells me such tickets, and that is all there is of the transaction, I think that would not be sufficient of itself to establish a contract on the part of the New York company for the safe carriage of my baggage beyond its own line. Of course, the sale of through tickets is a fact that may be taken into account in determining what the undertaking of the company issuing the tickets is; but such facts and circumstances growing out of the negotiations of the parties, or otherwise arising, ought to be shown as disclosing an understanding and agreement on both sides that the company selling the tickets undertook to be responsible for the safety of the baggage over other lines of road than its own through to its ultimate destination. Now, in view of what transpired between these parties and the agent in New York, in view of all the facts and circumstances attending the purchase of the tickets, did or did not the defendant so undertake and agree? If you find that such was the agreement or undertaking of the defendant, then your verdict should be for the plaintiff. If you do not so find, then your verdict should be in favor of the defendant.

If you should find for the plaintiff, the next question to be determined is, what is the extent of the defendant's liability? For the loss of what goods is the plaintiff entitled to be compensated, if entitled to recover at all? The box in question contained a variety of articles, all of which have been full enumerated by the witness testifying on the subject, and which at the time of the loss were owned by different persons,—some by the plaintiff, others by different members of his family, and still others by Schelongowsky. The plaintiff has produced in evidence an assignment to himself from the other parties in interest of all claims and rights of action accruing to them on account of the loss of such of the enumerated articles as belonged to them respectively. I do not understand the validity of this as-

signment to be questioned, and so the plaintiff stands here as the sole claimant for the entire loss.

The plaintiff's claim must be limited to baggage. But the question is, what is baggage? The rule on this subject can only be stated in general terms. The question what articles come within the rule is to be determined by the jury according to the circumstances of the case. Baggage, of course, includes wearing apparel, and this is not limited to such apparel only as the traveler must necessarily use on his journey. Regard being had to the condition in life of these parties, the plaintiff may recover—if entitled to recover at all—for the loss of all such wearing apparel as these people had provided for their personal use, and as it would be necessary or reasonable for them to use after their arrival and settlement in this country. And so I think that cloth not yet made into garments, but which they may have procured for manufacture into wearing apparel, and which they intended to make such use of, to a reasonable amount, may properly be included as part and parcel of their wearing apparel. So, too, these parties had the right to carry as baggage such jewelry and personal ornaments as were appropriate to their wardrobe, rank, and social position, but no further. As to bedding and bed furnishings not intended for use on the journey,—curtains, table-cloths and covers, books, pictures, and albums,—they come under the head of household goods, and not personal baggage, and cannot be recovered for, and must be excluded from your consideration, unless you find that the agent of the defendant company, when he sold the tickets, was informed or understood that the baggage which was to be carried with the passengers included articles of this character. Of course, if the defendant was informed that this box contained household goods as well as wearing apparel, or had good reason to understand and know that such was the fact, and then consented to accept the property as baggage under check, if liable at all, it is liable therefor the same as for wearing apparel, otherwise not. So, too, the painter's utensils and drawings, and the tailor's utensils enumerated in the list of articles lost, cannot be included as baggage; and for the loss of this property the plaintiff is not entitled to recover unless it is made to appear that the defendant knew or understood that such articles were in the box, and accepted them as baggage.

If your conclusion shall be that under the evidence the plaintiff is entitled to recover, you will consider this question of what constituted the baggage of these parties with care, and within the limitations I have stated; and in determining the amount of the recovery, you will ascertain what was the fair and reasonable value of the articles for which the plaintiff should be compensated. This value will depend upon the age and character of the articles, and the use for which they were intended. Of course the question is not what they could have been sold for in money, but what was their fair and reasonable value for use to the parties who owned them at the time of their loss.

The jury rendered a verdict for plaintiff, and on motion for a new trial, argued before the circuit and district judges, the foregoing instructions to the jury were approved.

---

CONDITIONS ON RAILWAY TICKETS OR CHECKS. It is now well settled that a railway company or other common carrier may, by special contract, limit its liability for the safety of persons and property intrusted to it for carriage, except for injuries caused by its own or its servants' negligence. In a few jurisdictions, like, for example, New York, its liability even for negligence may be limited. The general, though not the universal, rule is that the liability of a common carrier may be limited only by contract, and the question, in cases where limitation of liability is set up as a defense to an action for damages for injury to persons or property, is whether such contract has been made. This is usually determined by evidence showing acts of the passenger; such as, among other things, accepting a ticket for his passage or a check for his baggage, upon which is printed some condition or limitation of liability.

CASES WHEREIN THE LIABILITY WAS HELD LIMITED. In some cases the courts have had little difficulty in affirmatively answering the question whether a contract limiting liability was assented to. In *Shaw* v. *York & N. M. R. Co.*[1] it was decided that the shipper of horses is bound by a limitation of liability printed on the ticket for their transportation.[2] In *Steers* v. *Liverpool, etc., Steam-ship Co.*[3] the court sustained the limitation of liability printed upon a ticket issued for a passage across the ocean in a steam-ship. The court considered the purchase of a steam-ship ticket a matter of more deliberation and care than the purchase of a ticket for railway transportation, and that the passenger buying the steam-ship ticket might be presumed to have read its conditions, and to have consented, so as to make them part of the contract of transportation. From *Van Toll* v. *Southeastern R. Co.*[4] it would appear that a distinction exists between carriers and warehousemen in regard to limiting liability by notice on the back of a ticket given for baggage stored with them. The plaintiff, a passenger by the Southeastern Railway, on arriving at the terminus at London bridge, deposited in the cloak-room there a bag containing wearing apparel and jewelry to a value considerably exceeding £10, receiving as a voucher a ticket, on the back of which was printed a notice that the company would "not be responsible for any package exceeding the value of £10." A similar notice printed in large characters was posted in the office, but plaintiff swore that she did not see it. She was not asked whether she had seen the notice on the back of the ticket, but she produced it when she applied for the bag, which had part of its contents abstracted while in custody of defendants. It was held that the company having received the deposit, not as carriers, but as ordinary bailees, upon the terms contained in the printed notice, (which plaintiff, having the means of ascertaining, must be taken to have consented to be bound by,) was not responsible for the loss. While a distinction between warehousemen and carriers is suggested, the opinions of the judges appear to rest more upon the fact of actual knowledge of the notice and assent thereto by plaintiff. In *Zunz* v *Southeastern Ry. Co.*[5] the plaintiff took a ticket of the Southeastern Railway Company to be conveyed as a passenger from London to Paris, on which was printed " The Southeastern Railway Company is not responsible for loss or detention of or injury to baggage of the passenger traveling by this

---

[1] 6 Ry. Cases, 87.
[2] See, also, Austin v. Manchester R. Co. 10 C. B. 454.
[3] 57 N. Y. 1.
[4] 104 E. C. L. 75, (12 C. B. N. S. 75.)
[5] L. R. 4 Q. B. 539.

through ticket, except while the passenger is traveling by the Southeastern Railway Company's trains or boats." The plaintiff did not sign this memorandum, and his portmanteau was lost between Calais and Paris on a French railway. Held, that the company was protected by the condition on the ticket. COCKBURN, C. J., said: "However it may appear in practice to hold a man liable by the terms and conditions which may be inserted in some small print upon the ticket, which he only gets at the last moment after he has paid his money, and when, nine times out of ten, he is hustled out of the place at which he stands to get his ticket by the next comer; however hard it may appear that a man shall be bound by conditions which he receives in such a manner, and, moreover, when he believes that he has made a contract binding upon the company to take him, subject to the ordinary conditions of the general contract, to the place to which he desires to be conveyed; still, we are bound, on the authorities, to hold that when a man takes a ticket with conditions on it he must be presumed to know the contents of it, and must be bound by them." But this case appears to be overruled by a subsequent case,[1] wherein the lord chancellor declared that he was unable to find the authorities relied upon by Chief Justice COCKBURN.

PASSES. The acceptance of a pass, indorsed, "The person accepting this free ticket assumes all risks, etc., and expressly agrees, etc.," forms a contract on the part of the passenger with the company. "It seems necessary," said the court, "that the word 'agrees' means the concurrence of two parties, and that the act of acceptance binds the acceptor as fully as his hand and seal would."[2] "Applying for a pass or free ticket, taking it, and having it in his possession some six or eight hours before the starting of the train in which he was to go, and having his attention expressly called to its terms, taken in connection with the fact found by the jury that he was at the time of the accident actually riding on this ticket, if not conclusive as a legal presumption, would at least be evidence that he assented to the terms indorsed upon the ticket, from which a jury would be authorized to imply such assent."[3]

COMMUTATION TICKETS—REGULATIONS. The courts have also found little difficulty in inferring assent to the conditions printed upon the ticket, where such conditions were not limitations of liability, but reasonable regulations intended to govern the conduct of the passenger, and where the ticket, instead of being for a single passage, was a season or a commutation ticket; thus a passenger purchased a "season ticket" entitling him to transportation for a certain time between two points on the defendant's railroad at a considerable reduction from the regular rate of fare. Upon the ticket were indorsed the following conditions: "This ticket is not transferable, nor will any allowance be made to the within-named in case it may not be used for the whole time for which it was issued. It is subject to inspection at any time by the conductor; a refusal to comply will necessitate collection of full fare each time. It is good only for a continuous passage between the points named. If lost or mislaid, it will not be replaced by the company. The holder will please return when renewing." Upon the face of the ticket the words "for conditions see other side" were printed in small capitals. Plaintiff, having lost his ticket, refused to pay fare, and was accordingly ejected from the train. It was held (1) that plaintiff was bound to know the conditions, and the law would presume that he did so. *Semble,* that he would be bound to inform himself of the regulations of the company, even if not indorsed on the ticket. (2) That even if actual notice to him were necessary, the conditions in this case were printed in a sufficiently conspicuous manner to have

[1] Henderson v. Stevenson, L. R. 2 Sc. & Div. 470.

[2] Wells v. New York Cent. R. Co. 24 N. Y. 183.

[3] Perkins v. New York Cent. R. Co. 24 N. Y. 202.

attracted the attention of a man of ordinary prudence. (3) That the conditions were lawful, reasonable, and proper regulations, and not an attempt to limit the liability of the defendants as common carriers. (4) And that plaintiff was therefore excluded from the train and cannot recover.[1]

A passenger by railway upon a commutation coupon ticket, conditioned to be shown to the conductor on every trip, and to be void if the coupons were detached by any other person than the conductor, was proceeding to detach a coupon himself, and being warned by the conductor that he would not accept the coupon if he did so, persisted, offered the conductor the coupon, refused to show the ticket, and profanely dared the conductor to put him off. It was decided that this justified the conductor in ejecting him, and that the passenger's subsequent tender of the ticket and detached coupon before the ejection was complete, but in an insulting, profane, and boisterous manner, would not have restored the passenger's right to complete the journey.[2]

Where a ticket had upon it a condition that it was to be "used on or before" the twenty-sixth of September, and was presented and accepted on that day, but after the expiration of the 26th, the journey not being ended, the passenger was ejected for not having a proper ticket, it was held that the ejection was wrongful. When the ticket was presented on the 26th, it was "used," and passenger was entitled to ride to the end of his journey.[3] Assent has also been inferred from acceptance of a receipt given by a mercantile agency for an account presented to them, and left with them for collection.[4] But where a non-transferable ticket contained a condition that, "I failing to comply with this agreement, either of these companies may refuse to accept this ticket," it was held that this did not give the conductor the right to take the ticket up, only to refuse to receive it for passage.[5]

In all the foregoing cases the acceptance of a receipt or a ticket was a matter of some deliberation, wherein the acceptor had ample time to ascertain the nature of the contract as expressed on the ticket accepted.

CASES WHEREIN THE LIABILITY WAS HELD NOT LIMITED. The general principle of law is well established that a ticket for passage upon a railroad car or a steam-boat does not of itself create a contract between the carrier and the passenger. Such tickets are rather tokens or vouchers that passengers have paid their fare, and are entitled to seats in the car or berths in the steam-boat. As such they are to be surrendered when the passenger's right to the seat or berth is recognized.[6] In this respect tickets differ from bills of lading, which are well-recognized commercial contracts, and known to be such by all who receive them. Therefore it is that persons receiving bills of lading and other similar commercial instruments are conclusively presumed to know that they contain the terms upon which the property is to be carried, and to have assented thereto.[7] But there is no such conclusive presumption as to tickets. The question as to the character in which the paper is received is to be determined by all the surrounding circumstances. It is to be determined by the nature of the transaction, and not by the fact that the words "domestic bill of lading" or some such phrase may be printed on the ticket.[8] By these

[1] Cresson v. Philadelphia & R. R. Co. 11 Phila. 597; S. C. 32 Leg. Int. 363.

[2] Louisville, N. & G. S. R. Co. v. Harris, 9 Lea, 180; S. C. 42 Amer. Rep. 668. See, also, Bland v. Southern Pac. R. Co. 55 Cal. 570; S. C. 36 Amer. Rep. 50; Hoffbauer v. Delhi & N. W. R. Co. 52 Iowa, 342; S. C. 3 N. W. Rep. 121; S. C. 35 Amer. Rep. 278.

[3] Auerbach v. New York Cent. & H. R. R. Co. 42 Amer. Rep. 290; 89 N. Y. 281.

[4] Sanger v. Dun, 47 Wis. 615; S. C. 3 N. W. Rep. 388.

[5] Post v. Chicago & N. W. R. Co. (Neb.)

1883, 15 N. W. Rep. 225; S. C. 9 Amer. & Eng. R. Cas. 345.

[6] Nevins v. Bay State Steam-boat Co. 4 Bosw. 226; Logan v. Hannibal & St. J. Ry. Co. 12 Amer. & Eng. R. Cas. 142, (Mo. 1882;) Quimby v. Vanderbilt, 17 N. Y. 315.

[7] Detroit & M. R. Co. v. Fire & Marine Bank, 20 Wis. 127; Morrison v. Phillips & C. Con. Co. 44 Wis. 405; Strohn v. Detroit & M. R. Co. 21 Wis. 561; Grace v. Adams, 100 Mass. 508; Kirkland v. Dinsmore, 62 N. Y. 175.

[8] Madan v. Sherrard, 10 Jones & S. 355;

authorities the distinction drawn by Judge DYER in the principal case between tickets and bills of lading, and the presumptions to be drawn from the receipt of each, is well sustained.

The injustice of considering tickets purchased in the usual manner to be contracts between the carrier and the passenger, is made clearly apparent from the remarks of the supreme court of Virginia.[1] "Usually the ticket office is opened but a short time before the train leaves, and the ticket has to be exhibited to the baggage master before he will check for the baggage, so that a passenger has scarcely any time to read the ticket before the train leaves. In general he only asks for a through ticket to the place of his destination, and relies upon the agent to give him the proper tickets, and if the passenger had time to look at it for an instant in this case, she would have seen that it was a ticket issued by the railway from Richmond to the White Sulphur Springs. She would hand it to the porter or a friend to get checks for her baggage, while she would look out for a seat. It is returned with the checks, upon which are the letters ' W. S. S.' She feels assured all is right, and the next moment the train is moving. If she reads what is on the ticket at all, it is because she has nothing else to do, or from mere curiosity, and she reads for the first time: 'Responsibility for safety of person or baggage, on each portion of the route, confined to the proprietors of that portion alone.' She would say to herself, that was not my understanding when I asked for a through ticket, and when I paid for it to the railroad agent, and when they gave me a check for my baggage, which by the letters on it indicated that they undertook to carry it through to the White Sulphur Springs. But the train has been bearing her away from Richmond with the speed of twenty miles an hour, and it is too late to turn back."

The discussion in *Henderson* v. *Stevenson*[2] is also to the point: "Plaintiff purchased at defendant's office in Dublin a ticket from Dublin to Whitehaven on one of defendant's steamers. This ticket had on the face these words only, "Dublin to Whitehaven," without referring to the back of the ticket, on which was the following indorsement: "This ticket is issued on the condition that the company incur no liability whatever in respect of loss, injury, or delay to the passenger, or to his or her luggage, whether arising from the act, neglect, or default of the company, or their servants, or otherwise. It is also issued subject to all the conditions and arrangements published by the company." Plaintiff did not read the indorsement, and his attention was not directed to it by any one. The steamer was wrecked on the passage, entirely through the negligence of the captain and crew, and all of plaintiff's luggage lost. He sued in Scotland for its value and obtained judgment, which was taken on appeal to the house of lords by the company, which held again the plaintiff was not bound by the condition in the ticket. Said the lord chancellor: "It seems to me that it would be extremely dangerous, not merely with regard to contracts of this description, but with regard to all contracts, if it were to be held that a document complete upon the face of it can be exhibited as between two contracting parties, and without any knowledge of anything aside from the mere circumstance that upon the back of the document there is something else printed, which has not actually been brought to, and has not come to, the notice of one of the contracting parties, that contracting party is to be held to have assented to that which he has not seen, of which he knows nothing, and which is not in any way ostensibly connected with that which is printed or written upon the face of the contract presented

Blossom v. Dodd, 43 N. Y. 269; Baltimore & O. R. Co. v. Campbell, 36 Ohio St. 647; 3 Amer. & Eng. R. Cas. 246; Wilson v. Chesapeake & O. R. Co. 21 Grat. 675; Sunderland v. Westcott, 2 Sweeney, 260; Indianapolis & C. R. Co. v. Cox, 29 Ind. 360; Prentice v. Decker, 49 Barb. 21; Limburger v. Westcott, 49 Barb. 283; Brown v. Eastern R. Co. 11 Cush. 97.

[1] Wilson v. Chesapeake & O. R. Co. 21 Grat. 674.

[2] L. R. 2 Sc. & Div. 470.

to him. I am glad to find that there is no authority for such a proposition in any of the cases that have been cited." Lord CHELMSFORD said: "The lord chief justice, in the case of *Zunz* v. *Southeastern Ry. Co.* L. R. 4 Q. B. 544, which has been referred to, thought himself bound by the authorities to hold that when a man takes a ticket with conditions printed on it he must be presumed to know the contents of it and to be bound by them. I was extremely anxious to be referred to the authorities which influence the judgment of the lord chief justice, but, although numerous authorities were cited by Mr. Milward, none of them go to the length of establishing that a presumption of assent is sufficient. Assent is a question of evidence, and the assent must be given before the completion of the contract. The company undertake to convey passengers in their vessels for a certain sum. The moment the money for the passage is paid and accepted, their obligation to carry and convey arises. It does not require the exchange of a ticket for the passage money, the ticket being only a voucher that the money has been paid; or, if a ticket is necessary to bind the company, the moment it is delivered the contract is completed, before the passenger has had an opportunity of reading the ticket, much less the indorsement." Lord HATHERLY said: "I agree with the observation that was made by my noble and learned friend, Lord CHELMSFORD, that the money having been paid, and the ticket having been taken up, a contract was completed, upon the ordinary terms of conveyance, for himself and his luggage, unless it can be made out that he had entered into any special contract to the contrary. A ticket is in reality in itself nothing more than a receipt for the money which has been paid."

The courts in the following instances refuse to infer assent to a contract limiting liability from the receipt of a ticket having such limitation printed upon it:

Where the ticket had printed upon it the following: "Passengers are not allowed to carry baggage beyond $100 in value, and that personal, unless notice is given and an extra amount paid at the rate of a price of a ticket for every $500 in value." On the journey one of the trunks was lost containing wearing apparel and articles of ordinary baggage to the value of $690, and other property to the value of $730. Held that, notwithstanding the memorandum printed on the ticket, the plaintiff is entitled to recover the value of his trunk, and of such portion of the contents as is customarily known and carried as travelers' baggage, although worth more than $100, and though nothing extra was paid for baggage exceeding that sum in value.[1]

A passenger bought a ticket to a place, but desired to "stop over" *en route* at an intermediate point. The ticket had printed upon it, "Good for this day only," but the ticket agent assured the passenger that the conductor would issue a "stop-over check." This the conductor, in obedience to orders from his superiors, refused to do, but left the ticket in possession of the passenger, who "stopped over," and, proceeding on his journey at a later day, presented it to the conductor, who refused to accept it and demanded fare. This was refused, and the passenger was ejected. Held, that the ticket was not the sole evidence of the contract to carry the passenger, but that evidence of the conversation with the ticket agent might be introduced, under which the passenger had a right to stop over, and might recover for his expulsion.[2]

Defendant's agent came into a railway car in which plaintiff was traveling, and called for baggage. He received the check for plaintiff's trunk, with directions as to its delivery, and marked on a blank receipt the date, number of check, place of delivery, which he handed to plaintiff without anything being said as to its contents. The car was dimly lighted, so that plaintiff, where he was seated, could not have read the receipt, and, without looking at it or

[1] Nevins v. Bay State Steam-boat Co. 4 Bosw. 226.

[2] Burnham v. Grand Trunk R. Co. 63 Me. 301.

reading it, he put it in his pocket. The receipt was marked upon the margin, "Domestic bill of lading," and purported to be a contract relieving defendant from or limiting its liability in certain specified cases, and, in particular, limiting its liability, save in case of a special contract, to $100. The court refused to charge as a matter of law that the delivery of the receipt created a contract for the carriage of the trunk under the terms printed thereupon, and limited defendant's liability to the amount specified, but submitted the question to a jury.[1]

The plaintiff's daughter, accompanied by another young girl, delivered a check for a trunk to a transfer company in New York, with directions to carry it to her home in Brooklyn. She was about to leave the office, when, at her companion's suggestion that she ought to have a receipt, she returned to the desk, and demanded one of the clerk, who handed her a receipt, in which it was stipulated that the company should not be liable to an amount exceeding $100, unless a special contract was made. The trunk and contents were worth $300, but nothing was said as to its value; neither did she read the receipt or see its contents until after the loss of the trunk. Held, that the notice was ineffectual.[2]

Another case decides that there is no presumption of law that a passenger on a railroad has read a notice limiting the liability of the railroad corporation for baggage, printed on the back of a passenger check, delivered with his ticket, and having on its face the words, "Look on the back," whereon notice of such limitation of liability was printed in small type. Nor is there any presumption of notice of similar limitations contained in placards posted in the cars. But the court expressly refrained from adjudicating "upon the broader question, whether a limitation of the liability of the railroad company as to the amount and value of the baggage of passengers transported on the road may not be effectually secured by the delivery of a ticket to the passenger, so printed in large and fair type, on the face of the ticket, that no one could read the part of the ticket indicating the place to which it purports to entitle him to be conveyed without also having brought to his notice the fact of limitation as to liability for his baggage."[3]

The agent of an expressman entered a railway coach, took up the checks of a passenger desiring his valise delivered, and gave such passenger a receipt for the check, having a special contract limiting the the expressman's liability printed on one side of such receipt. The special contract was printed in very small type on the side of the receipt, and the passenger could not read it in the dimly-lighted car. Held, that his acceptance of it did not make it a contract between himself and the expressman. The court expressly distinguished such a receipt from a bill of lading: "As to bills of lading, and other commercial instruments of like character, it has been held that persons receiving them are presumed to know, from their uniform character and the nature of the business, that they contain the terms upon which the property is to be carried. But checks for baggage are not of that character, nor is such a card as was delivered in this instance. It was, at least, equivocal in its character. In such a case a person is not presumed to know its contents or to assent to them."[4]

In another case it was sought to establish a contract limiting a liability by delivering a ticket containing a notice of limitation to a German unable to read English. "The plaintiff was a German," said the court, "wholly ignorant of the English language. It is therefore the case of a passenger uninformed of the terms and conditions of the notice appended to the ticket, on which the defendants rely for protection. * * * It in truth would be ab-

[1] Madan v. Sherard, 73 N. Y. 330.
[2] Woodruff v. Sherrard, 9 Hun, 322.
[3] Malone v. Boston & W. R. Co. 12 Gray,
392. See, also, Verner v. Sweitzer, 32 Pa. St. 213.
[4] Blossom v. Dodd, 43 N. Y. 269.

surd to hold, under the circumstances, the company exempted from their common-law responsibilities on the foot of a special or express contract, when he was ignorant of the terms of the proposed agreement. Granting that tickets in any case, without more, may be considered as evidence of a special agreement, it is surely not exacting too much to require the carrier to have his tickets printed and his advertisements made in a language which the passenger can understand, or that he should be required to explain to him the nature and effect of the proposed agreement." This case very well illustrates the disposition of railroad companies to shirk and evade all the responsibilities incident to their duties, while at the same time grasping every dollar and advantage they can claim as compensation for doing those duties. While in this case the company took the passenger's money, and assumed the care and carriage of his baggage, they tried to rid themselves of responsibility by stipulating on the ticket that "All baggage at the risk of the owner thereof; the proprietors binding themselves to no charge or care of the same whatever." This case is directly in support of Judge DYER's decision in the principal case.[1]

In *Hopkins* v. *Westcott*,[2] A., a passenger on a railroad, delivered to an expressman a metallic check which he had received for his trunk, as baggage, so that the expressman might obtain the trunk and deliver it to the residence of A., who received from the expressman at the time a piece of paper on which the number of the check was indorsed, and which contained a printed notice that the expressman would "not become liable for merchandise or jewelry contained in baggage received upon baggage checks, nor for loss by fire, nor for an amount exceeding one hundred dollars upon any article, unless specially agreed for in writing on this check-receipt, and the extra risk paid therefor. * * * And the owner hereby agrees that Westcott Express Company shall be liable only as above." It was held that A. was chargeable with actual notice of the contents of this paper, and bound thereby. But the court evidently was unwilling to allow this ruling to release the expressman from liability for the value of the baggage in excess of $100, for it held that the words "any article" did not mean the trunk or piece of baggage and its entire contents in gross, but meant any article contained in the piece of baggage, and there being no single article worth more than $100, judgment was rendered for the value of all the articles together, aggregating $700. This case was discussed by Chief Justice CHURCH,[3] who said · "I infer that the learned judge who delivered the opinion in [*Hopkins* v. *Westcott*] intended to decide that something short of an express contract will suffice to screen the carrier from his common-law liability, and that a notice personally served, which could be read, would have that effect. The attention of the court does not seem to have been directed to the distinction between such a notice and a contract. The delivery and acceptance of a paper containing the contract may be binding, though not read, provided the business is of such a nature, and the delivery is under such circumstances, as to raise the presumption that the person receiving it knows that it is a contract containing the terms and conditions upon which the property is received to be carried. In such a case it is presumed that the person assents to the terms, whatever they may be. This is the utmost extent to which the rule can be carried without abandoning the principle that a contract is indispensable."[4]

In the United States courts, the rule has always been very strongly laid down. Thus, in *The Pacific*,[5] it was decided that in the federal courts, while the rule is that a common carrier may limit his liability, except for negligence,

[1] Camden & A. R. Co. v. Baldauf, 16 Pa. St. 67; but see Fibel v. Livingston, 64 Barb. 179.
[2] 6 Blatchf. 64.
[3] Blossom v. Dodd, 43 N. Y. 268.
[4] Id. 268, 269.
[5] Deady, 17.

by *express* agreement, nothing short of an express stipulation will constitute such an agreement, it must not depend upon implication or inference or conflicting evidence, and mere notice to the shipper is not sufficient. Where the drayman of the shipper, on the delivery of a package, takes a receipt from the freight clerk of the ship for the same, marked, "Not accountable for contents," this of itself does not constitute an agreement limiting the carrier's liability; it is a mere *ex parte* proposition on the part of the carrier after receiving the package, to which there must be direct and unequivocal evidence of the assent of the shipper to exonerate the carrier.

In *New Jersey Steam Nav. Co.* v. *Merchants' Bank,*[1] speaking of the right of the carrier to restrict his obligation by a special agreement, the supreme court of the United States said: "It by no means follows that this can be done by an act of his own. The carrier is in the exercise of a sort of public office, from which he should not be permitted to exonerate himself without the assent of the parties concerned; and this is not to be implied or inferred from a general notice to the public limiting his obligation, which may or may not be assented to. He is bound to receive and carry all the goods offered for transportation, subject to all the responsibilities incident to his employment, and is liable to an action in case of refusal. If any implication is to be indulged from the delivery of the goods under the general notice, it is as strong that the owner intended to insist upon his rights and the duties of the carrier, as it is that he assented to their qualification. The burden of proof lies on the carrier, and nothing short of an express stipulation by parol or in writing should be permitted to discharge him from duties which the law has annexed to his employment."

Commenting upon this case, Mr. Justice DAVIS said: "These considerations against the relaxation of the common-law responsibility by public advertisements, apply with equal force to notices having the same object, attached to receipts given by carriers on taking the property of those who employ them into their possession for transportation. Both are attempts to obtain, by indirection, exemption from burdens imposed in the interests of trade upon this particular business. It is not only against the policy of the law, but a serious injury to commerce, to allow the carrier to say that the shipper of merchandise assents to the terms proposed in a notice, whether it be general to the public, or special to a particular person, merely because he does not expressly dissent from them. If the parties were on an equality in their dealings with each other, there might be some show of reason for assuming acquiescence from silence; but in the nature of the case this equality does not exist, and therefore every intendment should be made in favor of the shipper when he takes a receipt for his property, with restrictive conditions annexed, and says nothing, that he intends to rely upon the law for the security of his rights. It can readily be seen, if the carrier can reduce his liability in the way proposed, he can transact business on any terms he chooses to prescribe. The shipper, as a general thing, is not in a condition to contend with him as to terms, nor to wait the result of an action at law in case of refusal to carry unconditionally. Indeed, such an action is seldom resorted to, on account of the inability of the shipper to delay sending his goods forward. The law, in conceding to carriers the ability to obtain any reasonable qualification of their responsibility by express contract, has gone as far in this direction as public policy will allow. To relax still further the strict rules of the common law applicable to them, by presuming acquiescence in the conditions on which they propose to carry freight, when they have no right to impose them, would, in our opinion, work great harm to the business community."[2]

[1] 6 How. 344.                              [2] Railroad Co. v. Manuf'g Co. 16 Wall 330.

As a result of the foregoing cases, the following conclusions may be stated: *In making a contract with a passenger for his transportation, a railway company may limit its liability, but, as a general rule, not for its negligence.* Mere notice that the railway company will not be liable in certain named contingencies will not suffice to create a contract of limitation; there must be a clear, unequivocal assent on the part of the passenger. Such assent may be express or implied, but it will not be implied (1) where the notice is obscurely printed, or printed in a language which the passenger cannot understand; (2) where the nature of the transaction is not such as necessarily to charge the passenger or shipper with knowledge that the paper contains a contract; *e. g.,* the acceptance of a bill of lading would be a transaction carrying notice of a contract printed upon it, but the acceptance of a ticket with conditions printed on it would not be such a transaction; nor (3) would a contract be created where the circumstances attending the delivery of the ticket repel the idea that the acceptor had knowledge of, or in fact assented to, the contract printed thereupon.

Tested by these considerations, the decision of the principal case upon this point appears to be unquestionably sound.　　　ADELBERT HAMILTON.